STATE OF CONNECTICUT *v.* TERRENCE D. HOLMES
(AC 21820)

Foti, Dranginis and Bishop, Js.

---

Argued January 16—officially released March 25, 2003

*Dean Lewis* and *Stephanie Evans,* law student interns, with whom was *Martin Zeldis,* senior assistant public defender, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Laura D. DeLeo*, former assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Terrence D. Holmes, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[1] The court sentenced the defendant to a twenty-year term of incarceration. On appeal, the defendant claims that the court improperly (1) failed to instruct the jury as to his claim that he acted in self-defense, (2) misled the jury by means of its instruction on intent and (3) failed to grant his motion for a judgment of acquittal on the basis of insufficient evidence. We affirm the judgment of the trial court.

From the evidence adduced at trial, the jury reasonably could have found the following facts. At some time prior to the events giving rise to this appeal, the defendant and Cynthia Bernard were romantically involved. The defendant had lived with Bernard in her New Haven home and was the father of one of Bernard's children. In December, 1998, however, Bernard met the victim, Joseph Donaby, and the two soon came to share in a romantic relationship. Donaby visited Bernard at her home several times, and the defendant encountered Donaby at the home on more than one occasion.

---

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

The jury acquitted the defendant of burglary in the first degree in violation of General Statutes § 53a-101 (a) (1), burglary in the first degree in violation of § 53a-101 (a) (2) and burglary in the second degree in violation of General Statutes § 53a-102.

On one such occasion, the defendant returned to Bernard's home during the early morning hours. The defendant banged on her door until Bernard opened it for him. When the defendant came into the home and observed Donaby in Bernard's bedroom, he expressed his displeasure with Donaby's presence. The defendant argued with Bernard and questioned her as to who Donaby was and why Donaby was with her. On another such occasion, Donaby was present at the apartment when the defendant was taking away some of his belongings.

In the evening hours of December 31, 1998, Donaby was at the home spending time with Bernard; the two were in the bedroom watching television. At or about midnight, the defendant went to Bernard's home, rang her doorbell and banged on her door. The defendant forcibly gained entry to the home and began yelling at Bernard, who had gone to the kitchen to see who was there. Soon thereafter, the defendant walked to the bedroom where he encountered Donaby. The defendant took a knife off of a hamper in the room and "swung a punch with the knife" at Donaby. Donaby pushed the defendant to the bed, thereby knocking the knife from the defendant's hand and causing the knife to land on the bed. The defendant and Donaby physically struggled on the bed. The defendant grabbed onto the knife, which was under Donaby's stomach, and attempted to stab Donaby. In the course of the altercation, the defendant flipped Donaby off of the bed.

As Donaby lay on the floor alongside the bed, the defendant, holding the knife, came down at him. The defendant positioned himself on top of Donaby and tried to stab Donaby in the face. Donaby reached up and grabbed the blade of the knife to protect himself. While the defendant pushed the knife closer to Donaby, Donaby continued to hold the knife and cried out for help. At one point in the struggle, the knife touched

Donaby's face and cut him. At that point, Donaby testi-
fied, he "went berserk"; he kicked, hit and yelled at the
defendant with all of his strength. Donaby fought with
the defendant until he was off of him. The defendant,
still holding the knife, remained in the bedroom. He
stood and looked at Donaby for a brief time before
he fled from the house. During the struggle, Donaby
sustained significant injuries to his hand; the defendant
lacerated severed muscles and an artery in the portion
of his hand between his thumb and index finger. The
defendant also cut Donaby's face. Additional facts will
be set forth as they become relevant to the issues raised
in this appeal.

I

The defendant first claims that the court improperly
failed to instruct the jury as to his claim that he acted
in self-defense. We disagree.

The record discloses the following. Prior to trial, the
defendant filed with the court a written request to
charge. The defendant requested, inter alia, that the
court instruct the jury to consider whether he had acted
in self-defense and whether his use of force against
Donaby was justified under General Statutes § 53a-19.
At trial, the defendant testified that he was living at
Bernard's home and that when he came home from
work on the night in question, he found Donaby in
the bedroom. The defendant also testified that he was
nervous and scared because he did not know who
Donaby was and why he was in the house. He further
testified that both he and Donaby became involved in
a struggle over a knife that was lying nearby and that
Donaby, who happened to grab the blade portion of the
knife, injured his hand in that struggle. The defendant
testified that although he engaged in a physical confron-
tation with Donaby, he did not attempt to stab him and
that after the incident he fled from the home.

The court did not instruct the jury as to the defense of justification. The defendant did not object to the court's charge. After the jury convicted the defendant of assault in the first degree, the defendant filed a motion for a new trial on the ground that the court violated the defendant's right to due process by failing to deliver the requested self-defense instruction.

The court, *Harper, J.*, presided over the defendant's trial. When the defendant's motion for a new trial came before the court, the judge noted that he was surprised upon reading the assertion of the defendant's counsel that the court had "refused the defendant's request for an instruction on self-defense." The state opposed the motion and argued that the defendant's counsel specifically had elected that the court not give an instruction on self-defense and that it draw the jury's attention to the defendant's claim that the injuries were accidental. The court noted that the resolution of the motion required factual findings related to a charging conference that had been conducted in chambers. There was no record, stenographic or otherwise, of the conference.[2] Accordingly, the court did not rule on the motion and it was assigned to the court, *Alexander, J.*

On November 3, 2000, Judge Alexander conducted a hearing on the defendant's motion. In the evidentiary phase of the hearing, the court heard testimony from the defendant's counsel and the prosecutor. The court also considered an affidavit submitted by Judge Harper. On February 16, 2001, Judge Alexander issued a memorandum of decision denying the defendant's motion.

The court specifically found that during the charging conference held before Judge Harper, the defendant's

---

[2] We note that effective January 1, 2002, Practice Book § 42-19 was amended to provide that if a charge conference takes place, "[t]he charge conference shall be on the record or summarized on the record." That amendment, which occurred after the time of the defendant's trial, does not apply to the present proceedings.

counsel made a tactical decision to withdraw his prior written request for an instruction on self-defense. The court concluded, as a matter of law, that on the basis of that factual record, the court, *Harper, J.*, had not violated the defendant's constitutional rights and that the defendant had not demonstrated that he was entitled to a new trial.

We first set forth our standard of review. "Appellate review of a trial court's decision granting or denying a motion for a new trial must take into account the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided. . . . Thus, [a] motion for a new trial is addressed to the sound discretion of the trial court and is not to be granted except on substantial grounds." *State* v. *Whipper*, 258 Conn. 229, 247, 780 A.2d 53 (2001).

In the present case, the defendant argues that he is entitled to a new trial because the court violated his due process rights in failing to deliver the self-defense instruction. "[A] fundamental element of due process is the right of a defendant charged with a crime to establish a defense. . . . This fundamental constitutional right includes proper jury instructions on the elements of self-defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified. . . . A defendant who asserts a recognized legal defense, the availability of which is supported by the evidence, is entitled as a matter of law to a theory of defense instruction." (Citations omitted; internal quotation marks omitted.) *State* v. *Ash*, 231 Conn. 484, 492–93, 651 A.2d 247 (1994).

In determining whether the court violated the defendant's due process rights, we first consider whether he asserted his right to receive the instruction or whether the court omitted the instruction because the defen-

dant's counsel agreed that it should do so.[3] "A defendant must . . . assert a recognized legal defense before such a charge will become obligatory." (Internal quotation marks omitted.) *State* v. *Morales*, 71 Conn. App. 790, 819, 804 A.2d 902, cert. denied, 262 Conn. 902, 810 A.2d 270 (2002).

Although it is undisputed that the defendant's counsel originally requested that the court deliver a self-defense instruction, Judge Alexander based her denial of the defendant's motion for a new trial on the finding that was made after an evidentiary hearing that his counsel had withdrawn the request. The defendant challenges that underlying factual finding. We will not disturb the court's factual findings unless they are clearly erroneous. "A finding of fact is clearly erroneous when there is no evidence to support it . . . or when . . . the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling . . . ." (Internal quotation marks omitted.) *State* v. *Rollins*, 51 Conn. App. 478, 482, 723 A.2d 817 (1999).

Having reviewed the record of the proceedings before Judge Alexander, we conclude that the court's finding has ample support in the evidence. First, Judge Harper averred that during the charging conference, he discussed with the defendant's counsel the appropriateness of a self-defense instruction in light of both the evidence adduced at trial and the defendant's claim that Donaby's injuries were accidental. Judge Harper further averred that after having discussed the issue with the

---

[3] The defendant preserved the issue for our review by filing a request to charge that included the instruction at issue. Practice Book § 42-16 (appellate court not bound to consider error in failing to give instruction unless matter covered by written request to charge or exception taken by aggrieved party immediately after charge delivered).

defendant's counsel, he "concluded that defense counsel opted to [forgo] his self-defense instruction." Judge Harper denied the assertion of the defendant's counsel that he had denied the request to deliver the instruction and noted that had the court chosen to deny the request, he would have stated the reasons for the denial on the record.

Second, the prosecutor also testified that during the charging conference, Judge Harper discussed the appropriateness of the self-defense instruction with the defendant's counsel. The prosecutor testified that after raising concerns about the instruction, Judge Harper stated to the defendant's counsel: "I will give the self-defense instruction, if you want it. I am not sure if you want it, you tell me." The prosecutor further testified that the defendant's counsel, after considering the court's observations about the instruction's appropriateness, represented his decision that the court marshal the evidence concerning the defendant's claim that Donaby's injuries were accidental and that counsel told the court not to "go with" the requested self-defense instruction.

Third, the defendant's counsel himself testified that he elected not to "pursue" his request for a self-defense instruction. Counsel testified that after having considered the court's concerns regarding the requested instruction, he felt compelled to "back down." According to the defendant's counsel, the instruction "which would have been given" would have "misled the jury," and he felt compelled to "back down" from pursuing the requested instruction. Counsel then testified that Judge Harper had not denied the request for the instruction directly, but had "de facto" denied the request.

On the basis of that evidence, the conclusion of Judge Alexander that the defendant's counsel had withdrawn

his request for a self-defense instruction is not clearly erroneous.[4] In support of that factual finding, the court noted the fact that the defendant's counsel failed either (1) to put on the record any of his concerns about Judge Harper's proposal immediately following the charging conference or (2) to object to the lack of a self-defense instruction at any time during the proceedings after the court delivered the charge. Those considerations certainly support the finding by Judge Alexander that "the decision to forgo the self-defense instruction was solely a tactical decision on the defense attorney's part."

Having reached that point in our analysis, we next consider whether Judge Harper properly omitted the instruction. We conclude that he did. The court has a right, if not a duty, to rely on the representations of a defendant's counsel. Matters of trial strategy and tactics rest with counsel for an accused. Furthermore, as this court recently has stated: "[D]ecisions concerning the composition of a jury charge fall into the category of decisions concerning matters of trial strategy." *State* v. *Stewart*, 64 Conn. App. 340, 353, 780 A.2d 209, cert. denied, 258 Conn. 909, 782 A.2d 1250 (2001). The defendant's counsel possessed the authority to waive his client's right to receive the instruction that he originally had requested. The court, acting on the representations of the defendant's counsel, properly omitted the instruction.[5]

---

[4] The defendant, in his principal brief, asserts that his counsel somehow lacked the authority to withdraw his request for a self-defense instruction. He posits: "The defendant maintains that the specific act of withdrawal should be similar in manner to the act of presenting. Since the instant request to charge was filed on the record by [the defendant's counsel], any withdrawal should at least be done on the record by [the defendant's counsel]." The defendant fails to cite any authority in support of this proposition and we find it to be wholly without merit.

[5] Having concluded as we do, we have no need to determine whether the evidence would have supported a self-defense instruction.

For those reasons, we conclude that the denial of the defendant's motion for a new trial reflected a proper exercise of discretion.

## II

The defendant next claims that the court's instruction concerning intent misled the jury. We disagree.

The defendant's claim requires us to examine in detail the court's instructions as to intent, which the court discussed several times in its charge. We set forth those instructions, not all of which directly related to the instructions concerning assault in the first degree, because the defendant claims that they affected the verdict.

The court first discussed intent in the context of its instructions concerning count one of the information, which charged the defendant with burglary in the first degree in violation of General Statutes § 53a-101 (a) (1). The court instructed the jury that it had to determine whether the defendant "intended to commit a crime" when he entered the building in question. The court then stated: "[A] person acts intentionally with respect to a result or to conduct described by the statute defining an offense when his conscious objective is to cause such result or to engage in such conduct." The court then informed the jury that the state had alleged that the defendant intended to commit the crimes of either larceny or assault. The court instructed the jury that one of the elements of assault is that the defendant "intended to cause physical injury to another . . . ." The court further instructed the jury that one of the elements of larceny is that the defendant possess the intent to deprive another of property or to appropriate the same to himself. The court reiterated those same instructions in its charge concerning count two of the information, which charged the defendant with burglary in the first degree in violation of § 53a-101 (a) (2).

The court then instructed the jury as to count three of the information, which charged the defendant with burglary in the second degree in violation of General Statutes § 53a-102. The court noted that its previous instructions as to counts one and two, insofar as they related to the element of intent, also applied to count three.

With respect to assault in the first degree, the specific crime of which the jury convicted the defendant, the court first read language from § 53a-59 (a) (1). The court stated: "A person is guilty of assault in the first degree when, with intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument." The court then stated that the state was required to prove beyond a reasonable doubt "that the defendant intended to cause serious physical injury to another person . . . ." After defining serious physical injury, the court again stated that the state bore the burden of proving beyond a reasonable doubt "that the defendant intended to cause serious physical injury to another person."

The court, making reference to General Statutes § 53a-3 (11), went on to state: "Our statute provides that a person acts intentionally with respect to a result or to conduct described by the statute defining [the] offense when his conscious objective is to cause such result or to engage in such conduct." The court further stated that "[i]ntention often can only be proven by the actions and statements of the person whose act is being examined. No one can be expected to come into court and testify that he looked into another person's mind and saw there a certain intention. Intent is a mental process that can be proven only by circumstantial evidence.

"Therefore, the way in which the jury can determine intent is by listening to testimony and by determining

what that person's conduct was, including the circumstances surrounding that conduct and then from that conduct and those circumstances inferring what his intention was. In other words, a person's intention may be inferred from his conduct. You may infer from the fact that the accused engaged in conduct, that he intended to engage in that conduct."

Shortly thereafter, the court stated that "[t]he state must prove beyond a reasonable doubt . . . that, acting with that intent, the defendant caused serious physical injury to another person. It does not matter whether the victim was the person upon whom the defendant intended to inflict serious physical injury if in fact you find such intent. It is sufficient that if you find that the defendant intended to cause serious physical injury to another person and that he, in fact, caused serious physical injury to that person or to some other person."[6]

During its deliberations, the jury sent a note to the court, requesting instruction as to the elements of assault in the first degree. The court summoned the jury to the courtroom and provided further instruction. As it had done before, the court read from the statute: "A person is guilty of assault in the first degree when, with intent to cause serious physical injury to another person, he causes such injury . . . ." The court again stated that one of the requisite elements of the crime is that "the defendant intended to cause physical injury to another person." The court went on to state: "The state must first prove beyond a reasonable doubt that the defendant intended to cause serious physical injury to another person." The court proceeded to instruct the jury that "a person acts intentionally with respect to a result or to conduct described by the statute defin-

---

[6] In marshaling the evidence and explaining generally the view of the evidence held by each party, the court stated: "The defendant claimed that he had no intent to cause harm to Mr. Donaby, but was merely trying to remove the knife from the reach of a perceived intruder in his home."

ing an offense when [his] conscious objective is to cause such result or to engage in such conduct." As it had done earlier, the court also instructed the jury that "a person's intention may be inferred from his conduct. You may infer from the fact that the accused engaged in conduct, that he intended to engage in that conduct."

Finally, the court stated: "[T]he state must prove beyond a reasonable doubt . . . that, acting with that intent, the defendant caused serious physical injury to another person. It does not matter whether the victim was the person upon whom the defendant intended to inflict serious physical injury, if, in fact, you find such intent, it is sufficient if you find that the defendant intended to cause serious physical injury to another person, and that he, in fact, caused serious physical injury to that person . . . ."

On appeal, the defendant claims that it is reasonably possible that the court's instructions concerning intent misled the jury. The defendant points out that the court read the statutory definition of intent from § 53a-3 (11) four times in its charge and likewise delivered instructions that linked intent to "engaging in conduct." The defendant claims, essentially, that the instructions improperly conveyed to the jury that the state needed to prove beyond a reasonable doubt only that he intended to engage in the conduct of fighting with Donaby, rather than that the state bore the burden of proving beyond a reasonable doubt that the defendant intended to cause serious physical injury.

The defendant did not object to any portion of the court's charge. Likewise, the defendant did not object to the court's supplemental instruction. We also note that by means of his written request to charge, the defendant specifically requested the instructions on

intent that he challenges now on appeal.[7] Nevertheless, the defendant seeks review of the court's instructions under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[8]

The record is adequate to review the claim. The state, however, points out the apparently disingenuous nature of the defendant's claim in that the defendant seeks to challenge on appeal the instructions that he requested at trial. The defendant nonetheless claims that his conviction resulted from a deprivation of his constitutional right to a fair trial in that the court's instruction on the essential element of intent misled the jury.[9] "Although

---

[7] The defendant's requested charge, under the heading, "Intent (C.G.S. § 53a-3 (11))," includes the following instruction: "Our statute provides that a person acts 'intentionally with respect to a result or to conduct described by the statute defining an offense when his conscious objective is to cause such result or to engage in such conduct.' "

The defendant also requested that the court provide the following instruction: "Intent may be proven by circumstantial evidence as I have explained that term to you. Therefore, one way in which the jury can determine what a person's intention was at any given time, aside from that person's own testimony, is first by determining what that person's conduct was, including any statements he made, and what the circumstances were surrounding that conduct, and then, from that conduct and those circumstances, inferring what his intention was.

"In other words, a person's intention may be inferred from his conduct. You may infer from the fact that the accused engaged in conduct that he intended to engage in that conduct."

[8] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[9] "Not every improper jury charge . . . results in constitutional error. . . . It is, however, well settled that claims of instructional error as to the essential elements of a crime are constitutional in nature. Claims in this category implicate the possibility of a due process violation affecting the fairness of the trial." (Citation omitted; internal quotation marks omitted.)

error induced by an appellant cannot be a ground for reversal and will not be reviewed . . . where the claim is of constitutional magnitude, it may be reviewed pursuant to *Golding*." (Citation omitted; internal quotation marks omitted.) *State* v. *Whipper*, supra, 258 Conn. 295 n.31;[10] see also *State* v. *Cruz*, 75 Conn. App. 500, 507, 816 A.2d 683 (2003). Accordingly, the claim is reviewable, and we now consider whether the defendant has demonstrated that the alleged constitutional violation exists and clearly deprived him of a fair trial.

"[I]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury." (Internal quotation marks omitted.) *State* v. *Burton*, 258 Conn. 153, 161, 778 A.2d 955 (2001). "[I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rule of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to a proper verdict . . . and not critically dissected in a microscopic search for possible error." (Citations omitted; internal quotation marks omitted.) *State* v. *Floyd*, 253 Conn. 700, 714, 756 A.2d 799 (2000).

Assault in the first degree is a specific intent crime. It requires that the criminal actor possess the specific

---

*State* v. *Westberry*, 68 Conn. App. 622, 635 n.9, 792 A.2d 154, cert. denied, 260 Conn. 923, 797 A.2d 519 (2002).

[10] The defendant in *State* v. *Whipper*, supra, 258 Conn. 294, challenged the trial court's instruction concerning the state's burden of proving its case beyond a reasonable doubt. Our Supreme Court observed that the defendant had, for the most part, requested the very instructional language that he challenged on appeal. Id., 295. The court afforded *Golding* review to his claim after stating, as we have in the present case, that the defendant's claim of instructional error implicated a constitutional right. Id.

intent to cause serious physical injury to another person. General Statutes § 53a-59 (a) (1). General Statutes § 53a-3 (11) defines intent, and the definition "embraces both the specific intent to cause a result and the general intent to engage in conduct described by a statute defining an offense." *State* v. *McColl*, 74 Conn. App. 545, 575, 813 A.2d 107, cert. denied, 262 Conn. 953, 818 A.2d 782 (2003). The court's reference to that portion of § 53a-3 (11) dealing with intent to engage in proscribed conduct was improper. The only part of the statutory definition of intent codified in § 53a-3 (11) that applied to the present case was the portion of the statute dealing with an actor's "conscious objective . . . to cause [a] result . . . ." Despite the fact that it was improper for the court to read the entire statutory definition of intent to the jury, that is not dispositive. See *State* v. *Austin*, 244 Conn. 226, 236, 710 A.2d 732 (1998). The defendant may prevail on his claim only if it is reasonably possible that the charge, viewed in its entirety, misled the jury.

After having carefully reviewed the entire charge, we conclude that any possible risk of confusion caused by the court's instructions concerning intent to engage in conduct was eliminated by its correct instructions on intent. As previously stated, the court, in the context of its initial instructions on assault in the first degree, referred only once to the complete statutory definition of intent. It improperly reiterated that instruction again in its supplemental instructions on assault in the first degree.[11] In *every* such instance, however, the court's improper references to intent were preceded and followed by correct instructions concerning the specific intent necessary to commit assault in the first degree.

The court repeatedly instructed the jury that to convict the defendant of assault in the first degree, it had

[11] As we have explained, the court made other references to the intent to "engage in conduct" in the context of its instructions as to the other crimes with which the defendant stood charged and of which he was acquitted.

to find that he intended to cause the victim serious physical injury. Those numerous, specific and unambiguous instructions accurately directed the jury to a proper consideration of the evidence. Although the court reiterated the statutory definition of intent, one which was overbroad, throughout the charge, it " 'strains reason' "; *State* v. *Prioleau*, 235 Conn. 274, 322, 664 A.2d 743 (1995), quoting *State* v. *Jaynes*, 36 Conn. App. 417, 429, 650 A.2d 1261 (1994), cert. denied, 233 Conn. 908, 650 A.2d 980 (1995); to believe that the jury could have misunderstood the court's charge to require that the jury base a finding of guilt on anything less than a finding that the defendant possessed the specific intent to cause serious physical injury. *State* v. *Prioleau*, supra, 322, citing *State* v. *Jaynes*, supra, 429.

We conclude that this case, involving multiple improper references to the intent to "engage in conduct" language, is akin to *State* v. *Austin*, supra, 244 Conn. 242 (numerous proper instructions eliminated risk of confusion caused by multiple improper instructions); *State* v. *Liebowitz*, 65 Conn. App. 788, 812, 783 A.2d 1108 (proper instruction in supplemental charge eliminated any risk of confusion caused by multiple improper instructions), cert. denied, 259 Conn. 901, 789 A.2d 992 (2001); and *State* v. *Chasse*, 51 Conn. App. 345, 370, 721 A.2d 1212 (1998) (numerous proper instructions eliminated any risk of confusion despite court's mixture of proper, improper instructions as to intent in its charge), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999). Compare *State* v. *DeBarros*, 58 Conn. App. 673, 755 A.2d 303, cert. denied, 254 Conn. 931, 761 A.2d 756 (2000), on which the defendant relies.[12]

---

[12] In *DeBarros*, this court reversed the defendant's conviction of murder, attempt to commit murder and assault in the first degree. *State* v. *DeBarros*, supra, 58 Conn. App. 675. This court held that the trial court's improper instructions on intent, instructions that concerned the intent to "engage in conduct," likely misled the jury. Id., 684. The court based its holding on its conclusions that the "order in which the instruction was read likely misled the jury"; id.; and that the improper instructions were "too numerous to be

The defendant cannot prevail under *Golding*'s third prong because he has failed to establish that a constitutional violation clearly exists and that it clearly deprived him of a fair trial.

## III

The defendant finally claims that the court improperly denied his motion for a judgment of acquittal on the basis of insufficient evidence. We disagree.

At the close of the state's case-in-chief and again after the jury rendered its verdict, the defendant sought a judgment of acquittal. The defendant argued, as he does now, that the evidence did not support a finding that he possessed the specific intent to cause Donaby serious physical injury. The court denied both motions.

We first set forth the applicable standard of review. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw

---

rectified by the court's proper instructions." Id., 683.

The court in the present case also intermixed proper and improper instructions on intent. As we have stated, however, we conclude that the order of the court's instructions essentially removed the possibility that the jury was misled by any of its incorrect instructions. Where the court improperly commented on or referred to the intent to "engage in conduct," it always did so in the context of the proper instruction and always followed such instruction or reference with an unambiguous proper instruction. Having reviewed the charge as a whole, we conclude that the improper instructions were neither too numerous nor of such character, given the order of the court's instructions on intent, to have possibly misled the jury.

whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . In conducting this review, the probative force of the evidence is not diminished where the evidence, in whole or in part, is circumstantial rather than direct." (Internal quotation marks omitted.) *State* v. *Guadalupe*, 66 Conn. App. 819, 823, 786 A.2d 494 (2001), cert. denied, 259 Conn. 907, 789 A.2d 996 (2002).

To warrant a conviction for assault in the first degree in violation of § 53a-59 (a) (1), the state bore the burden of proving the following elements beyond a reasonable doubt: (1) the defendant possessed the intent to cause serious physical injury to another person; (2) the defendant caused serious physical injury to such person or to a third person; and (3) the defendant caused such injury by means of a deadly weapon or a dangerous instrument. General Statutes § 53a-59 (a) (1). The defendant challenges only the sufficiency of the evidence in regard to the first of those essential elements, the specific intent required for the commission of the crime.

In reviewing the evidence adduced by the state, we are mindful that "[i]ntent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . It is axiomatic that a factfinder may infer an intent to cause serious physical injury from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading up to and immediately following the incident." (Internal quotation marks omitted.) *State* v. *Vasquez*, 68 Conn. App. 194, 207, 792 A.2d 856 (2002).

We find the defendant's claim to be less than compelling. The defendant devotes much of his brief to provid-

ing us with, as he concedes, a view of the evidence that is based solely on his testimony and "perceptions" of the events underlying his appeal. The defendant posits that the evidence supported a finding, in accordance with his testimony, that he returned to his home on the night of the incident, gained entry via a back window because he did not have his keys and found Donaby, who was a stranger to him, in his bedroom near a knife. The defendant claims that it was his "uncontradicted perception" that he was in danger at that moment and that he had to protect himself from Donaby. Further, he claims that the evidence did not support a finding that he intended to cause serious physical injury.

Although that version of events certainly comports with the evidence adduced by the defendant at trial, our task is to review all of the evidence adduced and to determine if, on the basis of any of the evidence adduced and the reasonable inferences drawn therefrom, the jury reasonably could have found as it did. Donaby testified that he had been in the defendant's presence before the incident occurred and that on one such occasion, the defendant had argued with Bernard over Donaby's presence in her bedroom. The jury also heard Donaby's testimony that on the night in question, the defendant forcibly gained entry to the home and was yelling at Bernard.

Donaby further testified that the defendant found him in the bedroom, took a knife off of a nearby hamper and attempted to stab him. Donaby also testified as to the ensuing struggle. After Donaby wrestled the defendant to the bed, the defendant grabbed the knife and tried to stab Donaby. The defendant pushed Donaby off of the bed, positioned himself on top of Donaby's body and pushed the knife toward Donaby's face. In the struggle, the defendant inflicted serious physical injuries on Donaby.

On the basis of the jury's verdict, it is obvious that it disbelieved the defendant's testimony and that it credited Donaby's testimony. "[I]t is beyond question that the trier of fact, here, the jury, is the arbiter of credibility. This court does not sit as an additional juror to reconsider the evidence or the credibility of the witnesses." *State* v. *Rivera*, 74 Conn. App. 129, 136, 810 A.2d 824 (2002).

The jury was free to consider the events leading to the incident; the defendant knew who Donaby was and he knew that Donaby was engaged in a relationship with Bernard. It would not have belied the common sense that our law expects the jury to apply to the evidence before it, including circumstantial evidence, for the jury to have inferred that the defendant's conduct resulted from motivations of anger or jealousy rather than from fear or impulses of self-defense. The jury also was free to consider the manner in which the defendant used the knife against Donaby. The attack was unprovoked, and the defendant had a clear opportunity to flee from the bedroom if, in fact, he feared for his safety. The defendant grabbed for the knife, swung it at Donaby and, during the ensuing struggle, attempted to push the knife into Donaby's face. The type of wound inflicted is equally telling because it is consistent with Donaby's testimony that he received it while repelling the defendant's attack. The fact that the defendant immediately fled the home after the attack further belies his version of events and is consistent with a finding that he possessed an improper motive.

On the basis of all of the foregoing, the jury reasonably could have found that the defendant acted as an aggressor and that rather than acting in self-defense or otherwise, intended to cause Donaby serious physical injury. For that reason, we conclude that the court properly denied the defendant's motion for a judgment of acquittal.

The judgment is affirmed.

In this opinion the other judges concurred.