# STATE OF CONNECTICUT *v.* WILLETTE NANCE
## (AC 30047)

Harper, Alvord and Foti, Js.

Argued October 15, 2009—officially released February 16, 2010

*Molly H. Arabolos*, certified legal intern, with whom was *Elizabeth M. Inkster*, senior assistant public defender, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *David A. Gulick*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Willette Nance, appeals from the judgment of conviction, rendered following a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[1] The defendant claims that the trial court (1) improperly denied her motion for a mistrial after the prosecutor referred to inadmissible evidence during his cross-examination of her and (2) improperly instructed the jury with regard to the essential element of intent. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. On July 23, 2006, at approximately 5:30 a.m., the victim, Georgina DeJesus, was standing outside a convenience store in Waterbury with three acquaintances, Dawn LeClair and two other females identified at trial only

---

[1] The trial court sentenced the defendant to serve a sixteen year term of incarceration, suspended after twelve years, followed by five years of probation with special conditions.

as Kim and Angie. Both LeClair and Angie had asked the victim to assist them in purchasing heroin for them from a heroin dealer known to the victim. To this end, the victim obtained money from LeClair and Angie and walked to a nearby location to meet with the heroin dealer. After the victim failed to find the dealer, she walked back to the convenience store's parking lot. Angie and Kim told the victim that, while she was away from the scene, the defendant had attempted to rob them. Angie and Kim showed the victim holes in their shirts, which, they stated, had been made by the defendant with the use of an instrument in her possession during the robbery attempt. The victim observed the defendant standing near the entrance to the convenience store, talking to LeClair. The victim called to LeClair and approached her, at which time she observed the defendant holding a razor blade.

The victim told the defendant that she wanted to talk with her and, when the defendant approached her, told the defendant to leave her friends alone. In reply, the defendant told the victim, "get down with me on this," which the victim understood as a command to assist her in robbing the others. After the victim replied that she would not assist her, the defendant threatened the victim, telling her that if she could not help her, then "she was going to fuck [her] up, too." The defendant then shoved the victim, beginning a brief physical confrontation between the two females. Shortly thereafter, a bystander stated that the police were on the way, which prompted the defendant and the victim to walk away from one another.

As the victim was walking away, the defendant approached her from behind and grabbed her hair. The defendant stabbed the victim in the back with the razor blade in her possession. While the defendant restrained the victim by holding her hair, a struggle ensued between the two females. The victim and the defendant

fell to the ground. The defendant positioned herself over the victim and, by swinging the razor blade across the victim's face, repeatedly cut the victim. In an effort to protect herself, the victim tried to open a knife in her possession but was not able to get it open. Standing over the victim while swinging the razor blade, the defendant stated: "I cut the bitch." At this point, LeClair tried to assist the victim. The defendant approached the victim while she was getting up off the ground, and, when the victim lifted her right leg to protect herself, the defendant cut the victim's leg with the razor blade.

After a bystander stated that the police were "really coming this time," the defendant fled the scene carrying some items that had fallen from the victim's purse. With LeClair's assistance, the victim made her way on foot to her nearby apartment. The victim assessed her numerous lacerations, which were bleeding profusely, and sought treatment at a hospital emergency room. Treatment included fifteen stitches in the area of the victim's eye, fourteen stitches on her back and five stitches on her leg; the lacerations resulted in permanent scarring. The victim spoke with the police at the hospital and identified the defendant as the perpetrator of the assault that resulted in her injuries.[2] The defendant's arrest followed. Additional facts will be set forth as necessary.

---

[2] The defendant testified at trial. Generally, the defendant testified that the victim instigated the physical altercation in the convenience store parking lot, during which incident she struck the victim in the back of her head with a bottle. The defendant testified that, after the victim brandished a knife and caused a laceration on the defendant's leg with the knife, a male acquaintance of the defendant who was present at the scene brandished a knife and caused lacerations to both her and the victim.

Following the incident, the defendant provided the police with a written statement, signed and sworn by her. In that statement, which contradicted the defendant's trial testimony in several significant regards, she stated that during a physical altercation with the victim in the parking lot, the victim brandished a "blade," and that, after she took possession of this instrument from the victim, she caused lacerations to the victim's face, back and leg.

## I

First, the defendant claims that the court improperly denied her motion for a mistrial after the prosecutor referred to inadmissible evidence during his cross-examination of her. We disagree.

The following additional facts underlie the defendant's claim. At trial, the defendant testified that during the incident at issue, she and the victim "got into a little tussle." The defendant stated that after she had said some things to the victim, including calling her "a junkie," the victim pushed her. The defendant stated that in response, she shoved the victim and struck the victim in the back of her head with a bottle. The defendant testified that a male acquaintance who was at the scene, identified by her only as Danny, caused the victim's lacerations during the incident by his use of a razor blade. The defendant also emphasized that she had consumed alcoholic beverages the night prior to the incident and that at the time of the incident, she was "still a little intoxicated." When the defendant testified, the defense was pursuing a theory of self-defense.

During the state's cross-examination of the defendant, the prosecutor questioned the defendant concerning her version of events as well as the ways in which her version of events at trial differed from those described in the sworn written statement that she provided to the police following her arrest. The following colloquy then occurred:

"[The Prosecutor]: You've been arrested before, right?

"[The Defendant]: Yes, I have.

"[The Prosecutor]: As a matter of fact, you have seven felony convictions, don't you?

"[The Defendant]: Yes, I do.

"[The Prosecutor]: You also have five violations of probation, don't you?

"[The Defendant]: Probably. My younger age, yes.

"[The Prosecutor]: Younger age?

"[The Defendant]: Yes, due to addiction. Yes.

"[The Prosecutor]: Are you a violent person?

"[The Defendant]: No, I'm not.

"[The Prosecutor]: You're not?

"[The Defendant]: No, I'm not.

"[The Prosecutor]: So, this is totally out of character for you?

"[The Defendant]: What, the reaction?

"[The Prosecutor]: The overreaction.

"[The Defendant]: I'm sorry? . . . I believe anybody is out of character when they're under. . . .

"[The Prosecutor]: You are not a violent person?

"[The Defendant]: I'm not a violent person. I'm saying anything can happen when you're drinking, you're drunk, on drugs. Anything can happen.

"[The Prosecutor]: So that justifies everything?

"[The Defendant]: It doesn't justify everything, sir.

"[The Prosecutor]: What about your prior violence?

"[The Defendant]: My prior violence? Under.

"[The Prosecutor]: So, robbery conviction, you were under?

"[The Defendant]: That was not even a robbery; it was prostitution gone wrong.

"[The Prosecutor]: You have a conviction for robbery first degree?

"[The Defendant]: That's what he signed for, but that's not what it was.

"[The Prosecutor]: That's not your fault either?

"[The Defendant]: I didn't say it was not my fault; it was prostitution gone wrong.

"[The Prosecutor]: Arson charge?

"[The Defendant]: Yes, that was twenty years ago.

"[The Prosecutor]: You have a prior assault first degree, which was dropped down to assault second—

"[Defense Counsel]: Objection, Your Honor.

"[The Defendant]: I don't know anything about that, sir.

"[Defense Counsel]: May the jury be excused, Your Honor?

"The Court: Yes."

At this time, the court excused the jury and the defendant's attorney moved for a mistrial. The defendant's attorney stated: "Clearly, [the defendant's] prior convictions are fair game in this matter. I advised her concerning that. We discussed it. I've raised no objections to the prosecutor's inquiry in that regard. But the last question was, what about the assault one that was subbed down? That's in effect a statement to the jury that [the defendant] was previously charged with assault in the first degree and thereafter convicted of something in that regard. Prior charges are not fair game. I think that the jury has been indelibly tainted and I would ask for a mistrial." The defendant's attorney asserted that the fact that the prior charge at issue was assault in the first degree was particularly prejudicial

to the defendant because the state was charging her with that same crime in the present case. The defendant's attorney also stated that he expected that the defendant would be cross-examined concerning her prior felony convictions but did not anticipate that the prosecutor would inquire with regard to specific prior assault charges and, specifically, the charge of assault in the first degree.

The prosecutor stated that the inquiry was for impeachment purposes, to rebut the defendant's testimony that she was not a violent person. The prosecutor agreed with the court's characterization of the rules of practice insofar as they permit the use of prior *convictions*, not prior *charges*, to impeach a witness. The prosecutor represented that his reference to the prior charge related to assault in the first degree was a misstatement. He stated: "I misread the issue, Judge. As I was going through it, I caught myself. That's how the question came the way it did."

Initially, the court addressed the defendant's objection by observing that the defense was aware prior to trial of the defendant's conviction of robbery in the second degree, had not filed a motion in limine related to that conviction and had not objected to the prosecutor's inquiry concerning the defendant's conviction of that crime. The conviction of robbery in the second degree was not the subject of the defendant's objection. Nevertheless, the court addressed the objection raised by ruling that such inquiry related to the robbery conviction was not improper and that the jury could consider that offense. The court noted that evidence of prior convictions is not admissible for impeachment purposes when the prejudicial effect of such evidence on a defendant outweighs its probative value. Turning to the subject of the objection distinctly raised by the defendant, the court concluded that the prosecutor's question concerning the prior assault charge and assault

conviction "pose[d] a problem." The court also concluded, however, that any prejudice caused by the prosecutor's question could be remedied by a curative instruction requiring the jury to disregard the question concerning the prior assault charge and the prior assault conviction.

The defendant's attorney stated that the court should not bring to the jury's attention for a second time the prior charge of assault in the first degree and, thus, objected to the court's resolution of the issue. The defendant's attorney stated, "I don't think it [can] be cured without making it worse. That's the reason behind my initial request for a mistrial."

After the jury returned to the courtroom, the court delivered, in relevant part, the following curative instruction: "I want to indicate to you that just before this recess there was some evidence that you heard regarding a prior conviction regarding an assault. Now, not all types of convictions can be used to impeach the credibility of a witness. Only, we have certain rules that require that there—certain scope of certain convictions that are used to impeach credibility of a witness. And in this case you heard some testimony which the court is going to exclude from evidence.

"So, any testimony that you heard regarding any prior conviction for assault or charges or convictions for assault in the first degree or assault in the second degree, you are to disregard it in its entirety. You are not to consider that as evidence. You are not to consider what you have heard in your deliberations. All right. With that instruction, we are going to proceed."

On the following day of trial, the court indicated during a charge conference that during its charge, it would instruct the jury to disregard the prosecutor's question and the defendant's answer to the question. The defendant's attorney objected to the matter being

brought to the jury's attention, saying it would "make matters worse," and asserted his belief that it was unlikely that the jury could disregard the prosecutor's question.

During its charge, the court instructed the jury that it must confine itself to the evidence when determining the facts of the case. The court instructed the jury that the questions asked by and the objections made by the attorneys were not evidence. The court also instructed the jury that testimony that has been excluded or stricken from the evidence was not evidence. The court instructed the jury that there was evidence that certain of the witnesses had been convicted of prior crimes but that such evidence was to be considered only in assessing such witness' credibility.

The court thereafter stated: "In this case, evidence was introduced to show that the defendant was convicted of another crime or crimes. Evidence of the commission of another crime or crimes other than the one charged is not admissible to prove the guilt of the defendant in this particular case. The commission of other crimes by the defendant has been admitted into evidence for the sole purpose of affecting her credibility. In weighing the testimony of the defendant, you may consider it along with all other evidence in the case. You may take into consideration the convictions of the defendant only as it bears upon the issue of her credibility along with the same considerations as those given to any other witness.

"Now, also in this case, you heard questions put to the defendant by the state about her prior conviction record. At one point the state questioned the defendant as to a prior charge of assault in the first degree, which was changed to assault in the second degree. As you may recall, at that time I instructed you that you may not consider that testimony or questions as evidence.

I want to further instruct you that you may not consider as evidence the defendant's answer to that question, as well. I also advised you that you may not consider that question posed by the prosecutor as evidence, and you may not consider those questions in your deliberations.

"Further, you may not use the evidence of a prior felony conviction as evidence of her guilt of this offense charged. You may not infer that, because she was convicted of a felony before, she is likely to have committed this offense. You may, however, if you find that it bears on credibility, use the fact that she has a felony conviction or convictions to find that she is not a believable witness and that, therefore, all or some of her version of the events in question is not true. The weight you give to this evidence in this regard is for you to decide." The defendant's attorney took an exception to this portion of the court's charge, not on the ground that it was not legally accurate but on the ground that any additional reference to the issue was likely to exacerbate the prejudice to the defendant. The defendant's attorney argued that no curative instruction could lessen the prejudicial effect of the improper questioning.

In this appeal, the defendant reiterates her claim that the questioning concerning the prior assault charge unfairly prejudiced her defense. The defendant argues that the court's curative instructions concerning the questioning were insufficient to cure the prejudice caused by the prosecutor and that she was deprived of a fair trial. The defendant argues: "At issue here is the prosecutor's implicit assertion that, because [she] had been charged once before with first degree assault, she was therefore guilty of the same offense in this case. Essentially, the prosecutor put her on trial for prior violence. The jury, in deciding the credibility of [the defendant] had to be influenced by this inflammatory evidence. Simply being told to ignore it was not enough

to ensure that [the defendant] was not harmed by the prosecutor's inadmissible line of questioning."[3]

"The standard for review of an action upon a motion for a mistrial is well established. While the remedy of a mistrial is permitted under the rules of practice, it is not favored. [A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided. . . . On appeal, we hesitate to disturb a decision not to declare a mistrial. The trial judge is the arbiter of the many circumstances which may arise during the trial in which his function is to assure a fair and just outcome. . . . The trial court is better positioned than we are to evaluate in the first instance whether a certain occurrence is prejudicial to the defendant and, if so, what remedy is necessary to cure that prejudice. . . . The decision whether to grant a mistrial is within the sound discretion of the trial court." (Internal quotation marks omitted.) *State* v. *Gilberto L.*, 292 Conn. 226, 236, 972 A.2d 205 (2009).

---

[3] In her appellate brief, the defendant focuses almost exclusively on the prosecutor's question concerning the prior assault *charge*. Insofar as that question relates to the court's denial of the defendant's request for a mistrial, the defendant properly preserved that issue for review by means of her timely objection at trial. We note, however, that in arguing that a mistrial was warranted, the defendant suggests in her brief that the prosecutor should not have questioned her concerning her prior assault *conviction*. We recognize that in addressing the defendant's request for a mistrial, the court deemed it necessary to exclude from the jury's consideration any questions and evidence concerning any prior assault charges or convictions. The defendant, however, did not in any way argue at trial that questions or evidence concerning her prior conviction of assault in the second degree was inadmissible. To the extent that the defendant raises such an issue for the first time on appeal, in support of her claim that the court improperly denied her request for a mistrial, we decline to consider such unpreserved evidentiary claim.

As a preliminary matter, we note that the state does not argue that evidence that the defendant, in an unrelated prior matter, had been *charged* with assault in the first degree was a proper inquiry. The state did not argue before the trial court, or before this court, that this inquiry, involving a prior charge, was a proper attempt to elicit evidence of prior misconduct. See Conn. Code Evid. § 4-5. In fact, the state acknowledges that its inquiry was improper. For the purpose of impeaching a witness' credibility, a party may seek to elicit evidence that a party has been *convicted* of certain crimes. See id., § 6-7. In determining whether to admit such evidence, the court, in its discretion, shall consider several factors, including the extent of prejudice likely to arise from the admission of the evidence. See *State* v. *Skakel*, 276 Conn. 633, 738–39, 888 A.2d 985 (discussing balancing process inherent in weighing admissibility of prior misconduct evidence), cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006); Conn. Code Evid. § 6-7 (a) (1).

Our review of the relevant facts leads us to conclude that the court did not abuse its discretion in denying the motion for a mistrial. As a preliminary matter, we observe that the prosecutor attempted to elicit evidence related to a prior assault charge by asking the defendant about such charge. The prosecutor did not present evidence that the defendant had been so charged because, in response to the inquiry, the defendant replied that she did not know anything about the prior charge. The inquiry of the prosecutor was not evidence, and the court so instructed the jury. Accordingly, this is not a case in which improper evidence was presented to the jury but a case in which an improper inquiry was made in the jury's presence.

Following the inquiry and the motion for a mistrial, the court discussed the matter with counsel and formulated a curative instruction that it immediately delivered

to the jury. In his discussion with the court concerning the prosecutor's inquiry, the defendant's counsel acknowledged that the state had the right to impeach the defendant with regard to her prior convictions and that he had expected such inquiry. The court, in an attempt to remove any prejudice caused by the question concerning the prior assault charge, went beyond instructing the jury to disregard that question and precluded any inquiry into a prior conviction of assault in the second degree. The defendant places great weight on the fact that the prior charge to which the prosecutor referred was for assault in the first degree, the same charge of which she stood accused in this case. Although we recognize that, to some extent, this similarity raised the potential for prejudice to the defense, we are not persuaded that such a similarity necessarily warrants a mistrial.

The improper inquiry occurred only once during the trial, and the court immediately addressed the matter with a curative instruction. The court revisited the issue once more during its final charge, instructing the jury to disregard the question as well as the defendant's response thereto. There is nothing in the record that suggests that the jury did not follow the court's instructions and, absent clear evidence to the contrary, we presume that the jury followed the court's instructions. See *State* v. *Anderson*, 86 Conn. App. 854, 870, 864 A.2d 35, cert. denied, 273 Conn. 924, 871 A.2d 1031 (2005). In an analogous case, *State* v. *Lasky*, 43 Conn. App. 619, 636, 685 A.2d 336 (1996), cert. denied, 239 Conn. 959, 688 A.2d 328 (1997), this court stated: "[T]he burden is on the defendant to establish that, in the context of the proceedings as a whole, the question was so prejudicial that it deprived him of a fair trial. . . . Even if the questions were improper, as the trial court apparently decided they were, the fact that the questions were asked is not enough to deprive the defendant of

a fair trial, particularly where the court gave an appropriate cautionary instruction to the jury." (Citation omitted; internal quotation marks omitted.) That same rationale applies to the present claim.

We are mindful that curative instructions are not a cure-all for every improper event that may transpire during a trial. See *State* v. *Binet*, 192 Conn. 618, 632–33, 473 A.2d 1200 (1984). The likely effectiveness of such a remedy is dependent on the magnitude of the impropriety to which it is directed. Here, the nature of the improper question asked in this case cannot be said to have had a likely significant impact on the defendant's credibility or any aspect of her defense. In light of the facts that the court immediately addressed the matter with proper curative instructions, the inquiry occurred only once and the state did not present evidence of a prior charge, we are not persuaded that the improper inquiry tainted the proceedings with such a degree of prejudice that the defendant was not afforded a fair trial. Accordingly, we do not conclude that the court's denial of the motion for a mistrial reflected an abuse of the court's discretion.

## II

Next, the defendant claims that the court improperly instructed the jury with regard to the essential element of intent. Although we agree with the defendant that the court's instruction was inaccurate, we do not agree that it was likely to have misled the jury, thus depriving her of a fair trial.

During its charge, the court delivered the following relevant instructions to the jury: "A person is guilty of assault in the first degree when, with intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument. For you to find the defendant guilty of this charge, the state

must prove the following elements beyond a reasonable doubt: one, that the defendant intended to cause serious physical injury to another person; two, that the defendant caused serious physical injury to that person or to a third person; and, three, that the defendant caused that injury by means of a dangerous instrument. . . .

"The state must first prove beyond a reasonable doubt that . . . the defendant intended to cause serious physical injury to another person. What the defendant intended is a question of fact for you to determine. Intent relates to the condition of the mind of a person who commits the act, his purpose in doing it.

"Now, as defined by our statute, a person acts intentionally with respect to a result or to conduct described by statute defining an event when his conscious objective is to cause such result or to engage in such conduct. Intentional conduct is purposeful conduct, rather than conduct that is accidental or inadvertent.

"Now, intent is a mental process. A person may take the [witness] stand and testify as to what his or her intention was. You may believe that testimony or not, according to whether or not you find that it warrants belief. But intention often can only be proven by the actions and statements of the person whose act is being examined. No one can be expected to come into court and testify that he looked into another person's mind and saw therein a certain intention. It is often impossible and never necessary to prove criminal intent by direct evidence. Intent may be proven by circumstantial evidence as I have explained that term to you. Therefore, one way in which the jury can determine what a person's intent was at any given time, aside from the person's own testimony, is first by determining what the person's conduct was, including any statements that he or she made, and what the circumstances were surrounding that conduct, and then, from that conduct and

those circumstances, inferring what his or her intention was.

"In other words, a person's intention may be inferred from one's conduct. You may infer from the fact that the accused engaged in conduct that she intended to engage in that conduct. This inference is not [a] necessary one. That is, you are not required to infer intent from [the] defendant's conduct, but it is an inference that you may draw if you find it is a reasonable and logical inference. I remind you that the burden of proving intent beyond a reasonable doubt is on the state."

In its instruction concerning the second element of the crime, the court delivered the following relevant instruction: "[T]he second element that the state must prove beyond a reasonable doubt is that, acting with that intent, the defendant caused serious physical injury to another person. It does not matter whether the victim was the person upon whom the defendant intended to inflict serious physical injury, if in fact you find such intent. It is sufficient if you find that the defendant intended to cause . . . serious physical injury to another person and that she in fact caused serious physical injury to that person or some other person."

The defendant claims that the court likely misled the jury and deprived her of her right to a fair trial by improperly instructing the jury to consider both her *intent to cause a specific result* as well as her *intent to engage in specific conduct*. The defendant asserts that, because assault in the first degree in violation of § 53a-59 (a) (1) is a specific intent crime, the state bore the burden of proving that she had acted with the intent to cause serious physical injury. The defendant argues that, by providing the jury with the complete statutory definition of intent; see General Statutes § 53a-3 (11); which encompassed both specific intent as well as general intent, the jury was misled as to this essential element of the crime.

The defendant submitted to the trial court two written requests to charge; neither request included an instruction concerning the requisite intent for assault in the first degree. Following the court's charge, the defendant did not take exception to the court's instruction concerning intent. Acknowledging that the claim of instructional error is unpreserved; see Practice Book § 16-20; the defendant affirmatively has requested review under the doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and has analyzed her claim pursuant to this doctrine in her principal appellate brief. We will review the claim under *Golding* because the record is adequate for review and the claim that the court improperly instructed the jury as to an essential element of the crime is of constitutional magnitude.[4]

---

[4] The state contends that we should decline to review this claim because the defendant waived any claim of instructional error by her acquiescence to the court's charge during trial. It is well settled that "when a right has been affirmatively waived at trial, we generally do not afford review under either *Golding* or the plain error doctrine." *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 70, 967 A.2d 41 (2009).

The record reflects that prior to closing arguments, the court provided both parties with copies of its draft jury charge. The court noted that it would review its proposed instructions "page by page" with counsel to determine if there were any objections by either party. At that time, the defendant's attorney informed the court that he had not sufficiently reviewed the draft charge. To address this concern, the court postponed such a detailed review of the charge until after closing arguments. After affording the parties an opportunity to review the draft charge, the court held a charge conference on the record. The court spent a great deal of time discussing the charge with the parties, and both parties addressed concerns with regard to the charge, although not with regard to the instruction at issue in the present claim. The court reviewed each portion of its charge, asking the prosecutor and the defendant's attorney whether there were any objections to each portion of the charge. With regard to the instructions as to the substantive offense, assault in the first degree, the court asked the parties if they had any objections. The prosecutor replied, "No objection," and the defendant's counsel replied, "No objection, Your Honor." The court also asked the parties if they objected to the court's providing a copy of its written instructions to the jury. The defendant's attorney replied that he had no objection to that being done.

Recently, in *State* v. *Ebron*, 292 Conn. 656, 682, 975 A.2d 17 (2009), our Supreme Court held that an appellant will not be deemed to have waived

See, e.g., *State* v. *Leroy*, 232 Conn. 1, 7, 653 A.2d 161 (1995) ("an improper jury instruction as to an essential element of the crime charged may result in the violation of the defendant's due process right to a fair trial").

"The standard of review for claims of instructional impropriety is well established. [I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's

a claim of instructional error unless it is shown that he "actively induced the trial court to give the . . . instruction that he . . . challenges on appeal . . . ." Following *Ebron*, a party will have waived an objection to instructional language if he or she has "actively induce[d] the trial court to act on the challenged portion of the instruction." Id., 680. The court discussed active inducement in terms of an appellant having supplied or otherwise advocated for the very instructional language at issue in the appeal. Id., 681–82.

In the present case, the court, in advance of its charge, delivered copies of its draft charge to the parties, afforded the parties an opportunity to review the draft charge and reviewed the charge in detail during a lengthy charge conference to address objections related to specific instructions. Certainly, the court took every practical step to ensure that the parties had an opportunity to state objections to its instructions while there was still an opportunity at trial to correct any errors or omissions in its charge. See *State* v. *Reynolds*, 118 Conn. App. 278, 305 n.7, 983 A.2d 874 (2009) (discussing purpose of charge conference as it relates to avoiding retrials arising out of instructional errors and preventing appellants from raising claims for first time on appeal), cert. denied, 294 Conn. 933, 987 A.2d 1029 (2010). Despite having stated that the defendant had no objection to the court's intent instruction, however, the defendant's attorney did not actively induce the court to deliver the instruction that it did. Accordingly, following the rationale set forth in *Ebron*, we do not conclude that the affirmative representations of the defendant's attorney during the charge conference constituted a waiver of the present claim.

instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury." (Internal quotation marks omitted.) *State* v. *Wallace*, 290 Conn. 261, 272–73, 962 A.2d 781 (2009).

The specific intent to cause serious physical injury is an essential element of assault in the first degree in violation of § 53a-59 (a) (1). See General Statutes § 53a-59 (a) (1); *State* v. *Holmes*, 75 Conn. App. 721, 736–37, 817 A.2d 689, cert. denied, 264 Conn. 903, 823 A.2d 1222 (2003). The court, in defining intent, read the entire statutory definition of intent, codified in § 53a-3 (11). That statutory definition encompassed the principle of general intent to engage in proscribed conduct as well as the principle of specific intent to cause a proscribed result. We agree with the defendant that the court's reference to the portion of § 53a-3 (11) concerning the intent to engage in proscribed conduct was irrelevant to the issues before the jury. Thus, we conclude that the court's instruction was improper. See *State* v. *Chapman*, 229 Conn. 529, 537, 643 A.2d 1213 (1994) (noting that "[i]t is improper for the trial court to read an entire statute to a jury when the pleadings or the evidence support a violation of only a portion of the statute").

Instructional errors of this nature are not uncommon. Our appellate courts have stated in numerous opinions that an instruction that mistakenly refers both to general intent and specific intent, when the charge relates to a crime requiring only the intent to cause a specific result, will not have deprived a defendant of a fair trial unless it is reasonably possible that the court's instructions, considered in their entirety, misled the jury. See, e.g., *State* v. *Austin*, 244 Conn. 226, 235–36, 710 A.2d 732 (1998); *State* v. *Prioleau*, 235 Conn. 274, 322, 664

A.2d 743 (1995); *State* v. *Aviles*, 107 Conn. App. 209, 233, 944 A.2d 994, cert. denied, 287 Conn. 922, 951 A.2d 570 (2008). Thus, the giving of an overinclusive instruction, even more than one time during the course of a charge, is not dispositive of the issue of whether the instruction deprived the defendant of a fair trial; a reviewing court must carefully evaluate the instructions as a whole to gauge their likely effect on the jury in guiding it to a proper verdict in accordance with the law. "[A] challenged jury charge is to be read as a whole . . . and judged by its total effect rather than by its individual component parts. . . . A quantitative litmus test measuring how frequently a trial court gives an irrelevant instruction is therefore insufficient to establish an instruction's tendency to mislead the jury. The tendency of an irrelevant instruction to mislead the jury instead must be considered in the context of the whole charge." (Citations omitted; internal quotation marks omitted.) *State* v. *Montanez*, 277 Conn. 735, 746, 894 A.2d 928 (2006); see also *State* v. *Sivak*, 84 Conn. App. 105, 112, 852 A.2d 812 (noting that in such cases "appellate review should consist of more than a numerical count of how many times the instruction was correct rather than incorrect"), cert. denied, 271 Conn. 916, 859 A.2d 573 (2004).

Our careful review of the court's entire charge reveals that the court explicitly referred to the general intent to engage in conduct only once, when it read the entire statutory definition of intent. In that instance, the court instructed the jury that a person acts intentionally "when his conscious objective is to cause such result *or to engage in such conduct.*" (Emphasis added.) The court shortly thereafter referred to the defendant's intent to engage in conduct when it stated: "You may infer from the fact that the accused engaged in conduct that she intended to engage in that conduct." This reference, however, was in the context of a discussion of

how a fact finder reasonably might evaluate a person's intent, by examining such person's intentional conduct. As it is well settled that an actor's specific intent may be and customarily is inferred from their intentional conduct; see, e.g., *State* v. *Silva*, 285 Conn. 447, 455, 939 A.2d 581 (2008), aff'd after remand, 113 Conn. App. 488, 966 A.2d 798 (2009); we do not conclude that this second reference to intent to engage in conduct was improper.

Prior to the single improper reference to general intent, the court, on three occasions, instructed the jury that the intent to cause serious physical injury to another person was an essential element of the crime. After the reference to general intent, the court twice instructed the jury that it must find that the defendant possessed the intent to cause serious physical injury to another person. The improper instruction was preceded and followed by unambiguous proper instructions. Viewing the charge as a whole, it strains reason to conclude that the jury would have been led to believe that the state need not have proved beyond a reasonable doubt that the defendant had acted with the intent to cause serious physical injury to the victim. Accordingly, we conclude that the defendant has failed to demonstrate that a constitutional violation clearly exists and that it clearly deprived her of a fair trial; the claim fails under *Golding*'s third prong.

The judgment is affirmed.

In this opinion the other judges concurred.