# STATE OF CONNECTICUT *v.* KHARI MILLER
## (AC 21471)

Lavery, C. J., and Landau and Healey, Js.

Argued September 13, 2001—officially released January 8, 2002

*Suzanne Zitser*, assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *David Zagaja*, assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Khari Miller, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a[1] and possession of a weapon in a motor vehicle in violation of General Statutes § 29-38. On appeal, he claims that the court (1) improperly denied his motion to suppress his statement to the police and (2) inadequately instructed the jury on self-defense. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the night of October 1, 1998, the defendant and two others were talking in the front yard of a house on Burnham Street in Hartford. Shortly before midnight, the victim drove up to the house. He parked, leaving his three year old son in the car, and joined the men. The victim initially was calm, but soon thereafter began to shout at the defendant.

After three to five minutes, the conversation turned violent, and the defendant shot the victim in the neck from a distance of four or five feet. The victim ran to his car and began to drive away, but crashed into a nearby fence. He died shortly thereafter as a result of the shooting. The police considered the defendant, who had left the scene, to be a suspect.

---

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

The next day, October 2, police officers saw the defendant getting into a car. They stopped the car and arrested him pursuant to an outstanding warrant related to an alleged felony murder committed on January 25, 1998.[2] The defendant was taken to the police station for questioning and signed a *Miranda*[3] waiver for the January, 1998 murder. While being questioned about that murder, he made an inculpatory statement about the October, 1998 murder that is the subject of this appeal. The police also found a gun wrapped in a shirt in the backseat of the car. They later determined that it was the one used to shoot the victim.

The defendant was charged with murder in violation of § 53a-54a and possession of a weapon in a motor vehicle in violation of § 29-38. After waiving his right to a probable cause hearing, he entered a plea of not guilty and elected a jury trial. On January 11, 2000, the court heard evidence and denied the defendant's motion to suppress a statement that he had made at the police station following his arrest.

The trial began on January 20, 2000. The defendant maintained that the shooting and killing of the victim was done in self-defense. On January 28, the jury found the defendant guilty of both crimes. He was sentenced on March 28 to a total effective sentence of fifty years incarceration.[4] This appeal followed. Additional facts and procedural history will be provided as necessary.

---

[2] A jury subsequently convicted the defendant of felony murder, robbery in the first degree and conspiracy to commit robbery in the first degree as a result of that crime. He received a total effective sentence of forty-five years incarceration, to run consecutive to the sentence he received for the October 1, 1998 murder.

[3] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[4] The defendant was sentenced to fifty years for the murder charge and five years for possession of a weapon in a motor vehicle. The lesser sentence was set to run concurrently with the greater one.

I

The defendant claims that the court improperly denied his motion to suppress a statement he allegedly had made to police about the October murder while they were questioning him about the January, 1998 murder. He argues that the arrest on an eight month old warrant the day after the October, 1998 murder was a pretext "in and of itself" for questioning him about this case. On the basis of that assumption, he argues that his statement was involuntary under the state and federal constitutions, regardless of whether it was unsolicited. We are not persuaded.

We review a trial court's findings and conclusions regarding a motion to suppress using a well established standard. "A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . " (Internal quotation marks omitted.) *State* v. *Clark*, 255 Conn. 268, 279, 764 A.2d 1251 (2001); see also Practice Book § 60-5. Our review is plenary for questions of law. *State* v. *Clark*, supra, 279.

According to the two detectives who testified during the suppression hearing, the defendant was told that they wanted to question him about the January, 1998 murder only. Although he was a suspect in the October, 1998 murder, the police did not have enough evidence about it to secure an arrest warrant. The defendant expressed a willingness to talk and signed a *Miranda* waiver that listed the docket number for the January, 1998 case at the top. While he was being questioned

about the January murder, the defendant blurted out a statement about the October murder.[5]

By contrast, the defendant testified at the suppression hearing that after he had signed a *Miranda* waiver to answer questions about the January, 1998 murder, the detectives gave him a second paper and asked if he wanted to talk about the October, 1998 murder. He further testified that he declined because he wanted to speak to an attorney on that matter and that despite his request, the detectives continued to mention the October murder while questioning him about the January case. The defendant testified that he again invoked his right to counsel and did not make any statement whatsoever regarding the October case.

In an oral decision denying the defendant's motion to suppress, the court did not make any factual findings as to whether the defendant's statement was in response to questions by the police about the October murder or whether the defendant had blurted out the statement. Rather, it found that the defendant's waiver of his *Miranda* rights was voluntary in light of his background, experience, conduct, intelligence, age, education, vocabulary, familiarity with English, mental and emotional state, lack of intoxication or drug use and the length of the detention. Additionally, it found no evidence from which it could infer threats or coercive tactics by the police to elicit the waiver. It also specifically discredited the defendant's testimony that he had requested an attorney.[6]

[5] Detective Luisa St. Pierre testified: "He told me that what happened to his boy was fucked up. And [I] asked him who was his boy, and he said [the victim]. And I said what happened to [the victim]. That is when he told me [the victim] came to where he was with another friend, and he and [the victim] had been drinking. [The victim] went to the trunk of the car, got a gun and came at him. He managed to get the gun from [the victim]. That is when he shot [the victim]."

[6] The court rendered its decision as follows: "The defendant filed his motion to suppress his October statements to the Hartford Police Department. On January 11, 2000, this court heard testimony from Detective Luisa

The defendant assumes that the court implicitly found that the police actually had questioned him about the October, 1998 murder, rationalizing that if the statement had been blurted out, then there was no reason for the court to address the validity of a *Miranda* waiver. The defendant then reasons that the arrest on the January case was pretextual and argues that such

St. Pierre, Detective Milton Zaavedra . . . and the accused. Based on the testimony presented, this court found, by a preponderance of the evidence, that the defendant knowingly and voluntarily waived his privilege against self-incrimination.

"The court had reviewed the particular facts and circumstances surrounding the case, including the background, the experience and the conduct of the accused, his level of intelligence, his age, his level of education, his vocabulary, his ability to read and write in the English language in which the warnings were given, his emotional state, level of intoxication or drug use, if any, the existence of any mental disease, defect or disorder, and finally, the circumstances and length of the detention.

"Reviewing the record in this case, in light of those factors, I find the state met its burden of showing the defendant had the capacity to understand the meaning of his constitutional rights. He's an adult who had attended high school, could read English, apparently had no difficulty communicating with the officers and indicated, on multiple occasions, he understood his rights. There's also no evidence he had the emotional state which would impair his ability to understand those rights. He was fully aware that he had a right not to answer questions, and that, if he chose to answer questions, he had the right to stop answering them at any time and have an attorney present during the questioning.

"I specifically discredit the defendant's testimony as to whether he requested an attorney. Specifically, this court finds the defendant's statement was voluntary, the product of an essentially free and unconstrained choice by its maker. There's no evidence from which I can infer the police used threats or any other coercive tactic to elicit the waiver of that inculpatory statement. The waiver is clearly inferred from the actions and words of the defendant. Indeed, his lack of hesitation at the time presents indicia he desired to speak and to waive his rights. He was not coerced into responding.

"The police made no promises or threats. He was not restrained during the time of the interview, nor was he under the influence of any drug or alcohol. He never expressed any desire to remain silent or that the police stop asking him questions.

"Under the circumstances, there was an expressed willingness to speak that constituted an explicit affirmative act, a waiver. Therefore, based on the totality of the circumstances presented, the statement is admissible as a product of the essentially free and unconstrained choice by the defendant."

inappropriate police action should preclude his statement as involuntary on three federal and state constitutional grounds.

The defendant first argues that the conduct of the police invalidated his *Miranda* waiver. Because he was told that he would be questioned only as to the January, 1998 murder and because he signed a waiver to that effect, he argues that any questioning concerning the October, 1998 murder invalidated that waiver. Although there is no requirement that the police tell a person the subject matter of their questioning when obtaining a *Miranda* waiver; see *Colorado* v. *Spring*, 479 U.S. 564, 577, 107 S. Ct. 851, 93 L. Ed. 2d 954 (1987); *State* v. *Hermann*, 38 Conn. App. 56, 66, 658 A.2d 148, cert. denied, 235 Conn. 903, 665 A.2d 904 (1995); the defendant distinguishes those cases by arguing that the police here affirmatively misrepresented the scope of their questioning. He argues that this is the type of trickery that *Miranda* protects against and that any waiver of rights was therefore not knowing, intelligent or voluntary.

Second, he argues that his confession was involuntary under the due process clause of the federal constitution.[7] See *Colorado* v. *Connelly*, 479 U.S. 157, 170, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986); *State* v. *Medina*, 227 Conn. 456, 467, 636 A.2d 351 (1993). He claims that the affirmative misrepresentations of the police "critically impaired his capacity for self-determination" and overbore his will.

In the event that we conclude that the defendant's statement was voluntary under the federal constitution, the defendant seeks relief under our state constitution's

[7] Determining voluntariness in the *Miranda* and due process contexts requires two separate analyses. See, e.g., *State* v. *Shifflett*, 199 Conn. 718, 727–34, 508 A.2d 748 (1986); D. Nissman & E. Hagan, Law of Confessions (2d Ed. 2001 Sup.) § 2.1.

due process clause, enumerated in article first, § 8.[8] Although that provision's language nearly mirrors that of the federal constitution, the defendant correctly notes the general proposition that state constitutions may provide higher levels of protection of individual rights than the federal one. See, e.g., *State* v. *Geisler*, 222 Conn. 672, 684, 610 A.2d 1225 (1992). He then cites at length Justice Berdon's dissent in *State* v. *Stanley*, 223 Conn. 674, 698–99, 613 A.2d 788 (1992) (*Berdon, J.*, dissenting), which sets forth the historical groundwork that arguably affords greater protection to claims of involuntary confessions under our state constitution.[9]

All of these arguments suffer from the same infirmity. Despite the defendant's assertion to us at oral argument that he raised the pretext argument "implicitly" at the trial level, we conclude that he raised this claim for the first time before this court. The written motion to suppress his oral statements and the weapon[10] did not address whether the conduct of the police was pretextual, nor, as we will discuss, did he argue pretext at the suppression hearing.

As a result, the arguments are reviewable only if all four prongs of the test set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[11] are met.

---

[8] Article first, § 8, of the constitution of Connecticut provides in relevant part: "No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law . . . ."

[9] We note that whether article first, § 8, of the Connecticut constitution provides greater protection than the federal constitution for involuntary confessions is an open question. See, e.g., *State* v. *Pin*, 56 Conn. App. 549, 555–56, 745 A.2d 204 (citing four cases from our Supreme Court dating from 1987), cert. denied, 252 Conn. 951, 748 A.2d 299 (2000).

[10] The defendant withdrew his claim regarding the seizure of the weapon prior to the suppression hearing.

[11] Pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40, constitutional claims not raised at trial can be reviewed by an appellate court only if "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis,

Because this is a conjunctive test, we are free to assess the defendant's claim by "focusing on whichever condition is most relevant in the particular circumstances." Id., 240. After careful review of the record and transcript, we decline to review the claim because the record is inadequate.

The defendant improperly asks that we make factual findings that his arrest on the January, 1998 murder was a pretext for detaining him for the October, 1998 murder and that the police actually interrogated him about this case. See, e.g., State v. Stanley, supra, 223 Conn. 689–90; cf. State v. Torres, 230 Conn. 372, 378–79, 645 A.2d 529 (1994). This is a determination that the trial court did not make and was not asked to make, and it is not supported by the evidence. During cross-examination of the detectives at the suppression hearing, the defendant elicited only that he was arrested and questioned about the January case, and that both detectives neither intended to nor actually asked him about the October case.[12] Indeed, Detective Luisa St. Pierre denied having questioned the defendant about the October murder and testified that she would have asked him about it only after he was arrested for it. Even the defendant, who testified that the officers had questioned him about the October case, does not challenge that he was questioned about the January murder. His closing argument included what might be construed

the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt."

[12] The following exchange is illustrative:

"[Defense Counsel]: If you had a form for the January case, why didn't you have a form for the October case?

"[Detective St. Pierre]: Because he was being arrested for the January homicide. Although he was a suspect on the other one, that was not the one I was asking him about.

"[Defense Counsel]: Had you intended to ask him at all about the October 1st case?

"[Detective St. Pierre]: After he was placed under arrest for that one, yes, I would have."

as a cryptic mention of the pretext claim,[13] but focused on whether his *Miranda* waiver was limited to the January, 1998 murder—a proposition for which he admitted that he could cite no case law. As a result, the court focused on the voluntariness of the defendant's waiver and never made a factual finding as to whether the arrest and questioning were pretextual.

The record is similarly lacking as to the alleged disconnect between what the police told the defendant they would question him about and their actual questioning. The police officers testified that the defendant blurted out the statement about the October murder without being questioned about it. The defendant testified that although the police interjected questions about the October murder, he made no statement whatsoever and renewed his request for an attorney. The court made no finding as to whether the police had questioned the defendant about the October murder or whether the defendant had blurted out the statement concerning that murder. Accordingly, we conclude that the record is inadequate as to the defendant's claim of pretext.

The defendant's reliance on *State* v. *Pin*, 56 Conn. App. 549, 555, 745 A.2d 204, cert. denied, 252 Conn. 951, 748 A.2d 299 (2000), is misplaced. In that case, the defendant challenged the court's admission into evi-

---

[13] In his closing argument, the defense counsel argued in relevant part: "Your Honor, I don't think the waiver of rights has any significance here. Clearly, [the defendant] was brought in. He was given this waiver of rights. Although the case law may not say that, it's specific to cases that specifically did this form with a case anything that first—the January case, which would certainly indicate they are going to question him about the October case.

\* \* \*

"According to [the defendant], he never talked about [the October] case, and the paperwork has certainly indicated there is no waiver of rights for that case, and, in fact, there wasn't even an interview. So basically, I think that [the defendant's statement about the October case] is, if you believe that it happened, they're taking the statement without getting him to sign his rights when that is something that they should have done."

dence of five inculpatory statements that he claimed were involuntary and, therefore, admitted in violation of article first, § 8, of the constitution of Connecticut. Id., 554. The defendant properly preserved for appellate review his claim as to three of the statements and sought *Golding* review as to the other two. Id. We undertook *Golding* review, noting that the parties and the court had developed an adequate record in the proceedings on the motion to suppress and that the other two statements had been made in "virtually identical" circumstances. Id., 555. That is not the case here.

A remand of the present case for further factual findings, which the defendant asks us to do in the event that we do not find the record to be adequate, is not an appropriate alternative. As our Supreme Court has stated, "under the test in *Golding*, we must determine whether the defendant can *prevail* on his claim . . . [t]he first prong of *Golding* was designed to avoid remands for the purpose of supplementing the record." (Emphasis in original.) *State* v. *Stanley*, supra, 223 Conn. 689–90; see also *State* v. *Medina*, supra, 227 Conn. 474.[14]

The defendant also asks for review under the plain error doctrine. The defendant cites *State* v. *Hinckley*, 198 Conn. 77, 87–88, 502 A.2d 388 (1985), and argues that it is clearly "in the interest of justice" to prohibit the use at trial of involuntary confessions or ones obtained in violation of *Miranda*. While that is true, the inadequate record prevents us from concluding that

---

[14] As the state points out, remanding the case could be an "exercise in perjury." The police officers testified that they did not ask any questions about the October murder. The defendant testified that he did not say anything in response to questions concerning the October murder, which the officers testified that they did not ask. The only way that the defendant can proceed with his claim is if he recants his testimony and states that he really did make the statement, but that it should be suppressed as involuntary.

the court improperly found that his confession was voluntary.

Practice Book § 60-5 provides that we "may in the interests of justice notice plain error not brought to the attention of the trial court. . . ." Such review is extremely limited. As our Supreme Court has noted, "[p]lain error review is reserved for truly extraordinary situations . . . and is not even implicated unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Burton*, 258 Conn. 153, 174, 778 A.2d 955 (2001). Furthermore, plain error review is appropriate where the record is complete. *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 38, 664 A.2d 719 (1995). Here, the record is inadequate. Therefore, we cannot conclude that the court's finding that the statement was voluntary was plain error.

II

At the trial, the defendant maintained that the shooting and killing of the victim was justified under General Statutes § 53a-19.[15] On appeal, he alleges that the court improperly charged the jury on this claim.[16] First, he

[15] General Statutes § 53a-19 (a) provides: "Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm."

[16] The court gave the following instructions on self-defense: "Now, in this particular case, the issue of self-defense has been raised. In claiming that he acted in self-defense, the defendant is claiming that he used deadly force that was justified.

\* \* \*

"Although the defendant raised the defense of justification, the state has the burden to prove beyond a reasonable doubt that the defendant was not justified in using deadly physical force.

claims that the court failed to explain how the jury could find the victim to be the "initial aggressor." Second, he

"There are three circumstances under which a person is not justified in using deadly physical force. If the state proves to you beyond a reasonable doubt any one of the circumstances, you shall find that the defendant was not justified in using deadly physical force.

"Under the first circumstance, a person is not justified in using deadly physical force when, at the time he uses the deadly physical force, he does not reasonably believe that the other person is about to inflict deadly physical force against him, or about to inflict great bodily harm to him.

"Great bodily harm is not limited by the definition of serious physical injury. It may encompass other acts, such as sexual assault or threat of sexual assault. The term great has its ordinary meaning and connotes a bodily harm that is substantially more than minor or inconsequential harm.

"In deciding whether the state has proven beyond a reasonable doubt that the defendant was not justified in using deadly physical force, you will first focus on the defendant. You will then focus on whether the defendant's belief was reasonable under all the circumstances that existed when he used deadly physical force.

"Self-defense requires the jury to measure the justification of the defendant's action, based upon what the defendant reasonably believed under the circumstances presented to him at the case, and on the basis of what the defendant reasonably perceived the circumstances to be. You look at the defendant first.

"The defendant's belief must have been reasonable and not irrational or unreasonable under the circumstances. That is, would a reasonable person in the defendant's circumstances have reached that belief? It is both a question of what his belief was, and then, whether that belief was reasonable. And I'll repeat that. It's a question of, first, what his belief was, and then, whether that belief was reasonable.

"The acts of [the victim] leading to the defendant's use of physical—deadly physical force need not be an actual threat or assault. The test is not what the victim actually intended but what the victim's act caused the defendant to reasonably believe the intention was. In other words, the danger need not have been actual or real.

"In judging the danger to himself, however, the defendant is not required to act with infallible judgment. Ordinarily, one exercising the right to self-defense is required to act instantly and without time to deliberate or investigate.

"Under such . . . circumstances, it is often possible to mistake an actual threat when none in fact exited. However, the defendant's belief of danger must be reasonable, honest and sincere. Apparent danger, with the knowledge that no danger exists, is not an excuse for using any force.

"If you find the state has proven beyond a reasonable doubt that the defendant did not in fact believe that the victim was using or about to use deadly force against him, or was inflicting or about to inflict great bodily harm to him, the defendant's self-defense claim must fail.

alleges that the court confused the jury by giving short shrift to the subjective component of the "subjective-objective" test. We disagree.

In *State* v. *Prioleau*, 235 Conn. 274, 284, 664 A.2d 743 (1995), our Supreme Court set forth the well established

"If, however, you determine that the—the defendant did in fact believe that the—the victim was using or about to use deadly physical force, or was inflicting or about to inflict great bodily harm, you must then decide whether that belief held by the defendant was reasonable under the circumstances. That is, would a reasonable person in the defendant's circumstances have reached that belief?

"If you find the defendant's belief was reasonable from the perspective of a reasonable person in the defendant's circumstances, you must decide whether the defendant reasonably believed that deadly physical force, as opposed to some lesser degree [of] force, was necessary to repel the attack.

"Deciding the defendant's belief regarding the necessary degree of force requires that you make two determinations. First, you must decide whether, on the basis of all evidence presented, the defendant in fact believed that he needed to use deadly physical force, as opposed to some other lesser form of force in order to repel [the victim's] attack. If you decide that the defendant did not in fact believe he needed to use deadly physical force to repel the attack, your inquiry ends, and the defendant's self-defense claim must fail.

"If, however, you decide the defendant did in fact believe that the use of deadly force was necessary, you must then decide whether the belief was reasonable under the circumstances. That is, would a reasonable person in the defendant's circumstances have reached that belief.

"Now, I'll explain to you another circumstance under which a person is not justified in using deadly physical force. A person is not justified in using deadly physical force upon anther person if he knows that he can avoid the necessity of using such force with complete safety by retreating. That means both that the retreat was completely safe and available, and that the defendant knew it. Complete safety means without any injury whatsoever to him.

"As I have said, self-defense requires that you focus on the person claiming the self-defense and on what he reasonably believes under the circumstances. It presents a question of fact as to whether a retreat with complete safety was available, and whether the defendant knew that.

"The law stresses that self-defense cannot be retaliatory. It must be defensive, not punitive. So you must ask yourself: Did the defendant know he could avoid the use of deadly physical force by retreating with complete safety? If so, and yet he chose to pursue the use of deadly physical force, you shall reject the self-defense claim.

"If you find proven beyond a reasonable doubt that retreat with complete safety was available and that the defendant knew it, you shall then find that the state has proven beyond a reasonable doubt that the defendant was not justified in using deadly physical force.

standard of review concerning a claim such as this. "An improper instruction on a defense, like an improper instruction on an element of an offense, is of constitutional dimension. . . . [T]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled. . . . In determining whether it was indeed reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Citations omitted; internal quotation marks omitted.) Id.

Furthermore, we previously have noted that "[a] refusal to charge in the exact words of a request . . . will not constitute error if the requested charge is given in substance." (Internal quotation marks omitted.) *State* v. *DeBarros*, 58 Conn. App. 673, 690, 755 A.2d 303, cert. denied, 254 Conn. 931, 761 A.2d 756 (2000), quoting *State* v. *Jennings*, 216 Conn. 647, 663, 583 A.2d 915 (1990).

We also note that the defendant did not take exception to the self-defense instruction during the trial, either during the original charge, when the court reread

---

"The defendant does not have to prove he acted in self-defense. Rather, it's the state's burden to disprove that defense beyond a reasonable doubt.

"In summary, you've heard all the evidence presented in this case in reference to the defendant's claim of self-defense. The state must disprove this defense beyond a reasonable doubt. If it has not, you must find the defendant not guilty . . . ."

it at the jury's request on the first day of deliberations or when it provided a paper copy to the jury at their request on the second day. Because the defendant submitted a request to charge on self-defense, however, he preserved his claim for review. See Practice Book § 42-16; *State* v. *Prioleau*, supra, 235 Conn. 283 n.10. As our Supreme Court in *Prioleau* acknowledged, however, a defendant's failure to object at the time "to some extent reflects the fact that the present claim has assumed an importance on appeal that was not evident at trial . . . ." *State* v. *Prioleau*, supra, 283 n.10.

A

In what he terms a "glaring deficiency," the defendant claims that the court did not properly instruct the jury on the initial aggressor concept. We are not persuaded.

Essentially, the defendant takes issue with the fact that the court did not tailor the jury charge to include certain statements made by the victim that the defendant alleges could have affected the defendant's state of mind. Specifically, he presented evidence that the victim told one person on the morning before the shooting that he was going to "kick [the defendant's] ass," and that the victim "got his shit up in his trunk and if anybody want to bring it, then he got it." Equating his case to *State* v. *Carter*, 48 Conn. App. 755, 713 A.2d 255, cert. denied, 247 Conn. 901, 719 A.2d 905 (1998), the defendant argues that although the trial court demonstrated great latitude in allowing evidence that went to show the victim's violent propensities, it improperly failed to integrate those facts into its charge so that the jury could find that the defendant believed the victim to be the initial aggressor. We are not persuaded.

Section 53a-19 (a) provides in relevant part that "a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or immi-

nent use of physical force, and he may use such degree of force which he reasonably believes to be necessary . . . except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm." See, e.g., *State* v. *Prioleau*, supra, 235 Conn. 292.

Although the court did not explicitly instruct the jury that the initial aggressor may not necessarily be the person who first uses physical force, the concept was implicit throughout the charge. See id., 292–93. Here, just as in *Prioleau*, "[o]n several occasions, the trial court instructed the jury that the defendant was justified in using deadly physical force against the victim if the defendant had reasonably believed that such force [was] necessary to protect himself from the use or impending use of physical force by the victim." (Internal quotation marks omitted.) Id., 293. Furthermore, the defendant concedes that he "did not specifically give the trial court the language that he now argues on appeal should have been given by the court . . . ." Finally, the state correctly points out that there is nothing in the record to support that the defendant learned of the victim's threats or was affected by them. As a result, the court did not mislead the jury by not giving a charge that the defendant not only did not ask for, but also that the evidence did not support. See *State* v. *Diggs*, 219 Conn. 295, 299, 592 A.2d 949 (1991).

B

The defendant also claims that the court's charge on the reasonableness of his belief to use self-defense overemphasized the objective portion of the "subjective-objective" test. We disagree.

The jury was required to make two separate determinations as to the defendant's belief regarding what degree of force was required for his self-defense claim to succeed. First, the jury had to determine whether the

defendant subjectively believed in fact that he needed to use deadly force. If the jury concluded that the defendant believed that such force was necessary, it then had to determine whether that belief was objectively reasonable, from the perspective of a reasonable person in the defendant's circumstances. See, e.g., *State* v. *Prioleau*, supra, 235 Conn. 286–87.

The defendant claims that the court at one point seemingly conflated the two determinations, charging that "[s]elf-defense requires the jury to measure the justification of the defendant's action, based upon what the defendant reasonably believed under the circumstances presented to him at the case, and on the basis of what the defendant reasonably perceived the circumstances to be," rather than what the defendant in fact believed. While the defendant concedes that the court later correctly charged the jury, he argues, citing *State* v. *Ash*, 231 Conn. 484, 496–97, 651 A.2d 247 (1994), that the number of times that it incorrectly charged the jury made "it reasonably certain at best they were confused as to the correct standard." We disagree.

Viewing the court's charge as a whole,[17] we conclude that it is clear that the court did not overemphasize the objective portion. After the language that the defendant cites as improper, the court charged the jury correctly on both the subjective and objective determinations. Additionally, the jury was instructed a second time on self-defense and later received that portion of the charge in writing. In light of the requirement of § 53a-19 that the defendant's actions be reasonable; see *State* v. *Prioleau*, supra, 235 Conn. 286–87; we conclude that the court's instructions did not mislead the jury.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[17] See footnote 16.