******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KHARI MILLER *v.* COMMISSIONER OF CORRECTION
(AC 35788)

DiPentima, C. J., and Sheldon and Sullivan, Js.

Argued September 11—officially released December 9, 2014

(Appeal from Superior Court, judicial district of Tolland, Cobb, J.)

*Michael D. Day*, for the appellant (petitioner).

*Maria del Pilar Gonzalez*, special deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Jo Anne Sulik*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

SULLIVAN, J. The petitioner, Khari Miller, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his third amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court abused its discretion in denying the petition for certification to appeal and improperly determined that (1) his trial counsel rendered effective assistance despite failing to "properly and adequately develop and raise a claim of self-defense at the petitioner's underlying criminal trial," specifically, by failing to call the petitioner to testify; (2) his trial counsel rendered effective assistance although he did not object to or otherwise challenge the trial court's initial jury charge on intent; and (3) his appellate counsel rendered effective assistance despite failing to raise a claim of instructional error on direct appeal with respect to intent. We agree that the court abused its discretion in denying certification to appeal. Nevertheless, we conclude that the court properly determined that the petitioner failed to prove that either trial or appellate counsel rendered ineffective assistance. Accordingly, we affirm the judgment of the habeas court.

The following facts and procedural history are relevant to our resolution of the petitioner's appeal. In 2000, following a jury trial, the petitioner was convicted of murder in violation of General Statutes § 53a-54a and possession of a weapon in a motor vehicle in violation of General Statutes § 29-38. The trial court imposed a total effective sentence of fifty years incarceration. This court affirmed the judgment of conviction on direct appeal. *State* v. *Miller*, 67 Conn. App. 544, 787 A.2d 639, cert. denied, 259 Conn. 923, 792 A.2d 855 (2002). The petitioner subsequently petitioned our Supreme Court for certification to appeal. On February 6, 2002, the Supreme Court denied the petition. *State* v. *Miller*, 259 Conn. 923, 792 A.2d 855 (2002).

On direct appeal, this court noted that the jury reasonably could have found the following facts: "On the night of October 1, 1998, the [petitioner] and two others were talking in the front yard of a house on Burnham Street in Hartford. Shortly before midnight, the victim drove up to the house. He parked, leaving his three year old son in the car, and joined the men. The victim initially was calm, but soon thereafter began to shout at the [petitioner].

"After three to five minutes, the conversation turned violent, and the [petitioner] shot the victim in the neck from a distance of four or five feet. The victim ran to his car and began to drive away, but crashed into a nearby fence. He died shortly thereafter as a result of the shooting. The police considered the [petitioner], who had left the scene, to be a suspect.

"The next day, October 2, police officers saw the [petitioner] getting into a car. They stopped the car and arrested him pursuant to an outstanding warrant related to an alleged felony murder committed on January 25, 1998. The [petitioner] was taken to the police station for questioning and signed a *Miranda*[1] waiver for the January, 1998 murder. While being questioned about that murder, he made an inculpatory statement about the October, 1998 murder that is the subject of this appeal. The police also found a gun wrapped in a shirt in the backseat of the car [in which the petitioner was apprehended]. They later determined that it was the one used to shoot the victim." (Footnotes altered.) *State* v. *Miller*, supra, 67 Conn. App. 545–46.

On November 13, 2012, the petitioner filed his third amended petition for a writ of habeas corpus. In count one, he alleged, inter alia, that his trial attorney, William Shea, had rendered ineffective assistance by (1) failing to call the petitioner to testify in support of his defense at trial and (2) failing to object to the trial court's jury charge on intent. The petitioner claimed that but for his trial counsel's deficient performance, the result of the trial would have been more favorable. In count two, the petitioner alleged that his appellate attorney, Suzanne Zitser, had rendered ineffective assistance by failing to challenge on appeal the trial court's charge on intent. The petitioner claimed that "but for appellate counsel's failure to properly and adequately raise [that issue] on appeal, [he] would have prevailed in his direct appeal."[2]

At the habeas trial on November 13, 2012, the court heard testimony from the petitioner, Shea, and Attorney Jeffrey Kestenband, the petitioner's expert witness. In a memorandum of decision filed May 17, 2013, the court, *Cobb*, *J.*, denied the third amended petition. Thereafter, the petitioner filed a petition for certification to appeal pursuant to General Statutes § 52-470 (g).[3] The court denied the petition for certification to appeal, and this appeal followed. Additional facts will be set forth as necessary to review each of the petitioner's claims.

I

On appeal, the petitioner argues that the habeas court abused its discretion in denying his petition for certification to appeal. He argues that the question of whether his trial and appellate counsel were constitutionally deficient was not frivolous and, therefore, certification should have been granted. We agree.

In *Simms* v. *Warden*, 230 Conn. 608, 615–16, 646 A.2d 126 (1994), this court adopted the factors identified by the United States Supreme Court in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), as the appropriate standard for determining whether the habeas court abused its discretion in denying certification to appeal. "Faced with the habeas

court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. . . . A petitioner may establish an abuse of discretion by demonstrating that the issues are debatable among jurists of reason . . . [the] court could resolve the issues [in a different manner] . . . or . . . the questions are adequate to deserve encouragement to proceed further. . . . The required determination may be made on the basis of the record before the habeas court and applicable legal principles. . . . If the petitioner succeeds in surmounting that hurdle, the petitioner must then demonstrate that the judgment of the habeas court should be reversed on its merits." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Crespo* v. *Commissioner of Correction*, 292 Conn. 804, 811, 975 A.2d 42 (2009); see also *Simms* v. *Warden*, supra, 612.

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria identified in *Lozada* and adopted by this court for determining the propriety of the habeas court's denial of the petition for certification. Absent such a showing by the petitioner, the judgment of the habeas court must be affirmed." *Taylor* v. *Commissioner of Correction*, 284 Conn. 433, 449, 936 A.2d 611 (2007).

Further, this court has held that it is improper for a trial court to reference in its instructions the portion of General Statutes § 53a-3 (11)[4] addressing the intent to engage in proscribed conduct where the defendant has been charged with a specific intent crime. See, e.g., *State* v. *Holmes*, 75 Conn. App. 721, 736–37, 817 A.2d 689, cert. denied, 264 Conn. 903, 823 A.2d 1222 (2003).

Upon review of the three claims raised by the petitioner, we agree with the petitioner that the habeas court abused its discretion in denying his petition for certification to appeal. The petitioner's claim that his trial counsel rendered ineffective assistance in not objecting to the trial court's initial charge on intent, which was subsequently repeated verbatim in its charge in response to a question from the jury regarding the definition of intent, is the kind of claim that warrants further consideration by this court. See *Lozada* v. *Deeds*, supra, 498 U.S. 432.

In the present case, the trial court, *Dewey, J.*, orally instructed the jury on two occasions, reciting the entire definition of intent. The jury was then provided with an exact written copy of these improper instructions. Subsequently, the court correctly instructed the jurors,

on approximately nine occasions, that to find the petitioner guilty of murder, they must find that he caused the death of the victim with the specific intent to cause his death. The habeas court acknowledged that, although "it is improper for a court to refer in its instruction to the entire definitional language of § 53a-3 (11), including the intent to engage in conduct, when the charge relates to a crime requiring only the intent to cause a specific result . . . a trial court's improper instruction on general intent does not necessarily mean that the jury was misled." (Citations omitted; footnote omitted; internal quotation marks omitted.) Jurists of reason could disagree as to whether it is reasonably possible that the charge, viewed in its entirety, misled the jury. See *State* v. *Holmes*, supra, 75 Conn. App. 737. Accordingly, we conclude that the court abused its discretion in denying the petition for certification to appeal and proceed to a full review of the merits of the petitioner's appeal.

II

As stated previously, the petitioner claims that the habeas court improperly determined that (1) his trial counsel rendered effective assistance despite failing to "properly and adequately develop and raise a claim of self-defense at the petitioner's underlying criminal trial," specifically, by failing to call the petitioner to testify; (2) his trial counsel rendered effective assistance although he did not object to or otherwise challenge the trial court's initial jury charge on intent; and (3) his appellate counsel rendered effective assistance despite failing to raise a claim of instructional error on direct appeal with respect to intent. We disagree.

Turning to the merits of the petitioner's ineffective assistance of counsel claims, we first set forth our standard of review. "Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Goodrum* v. *Commissioner of Correction*, 63 Conn. App. 297, 299, 776 A.2d 461, cert. denied, 258 Conn. 902, 782 A.2d 136 (2001).

First, we summarize the law governing the petitioner's three claims. Our Supreme Court has adopted the two-pronged test promulgated by the United States Supreme Court in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to analyze claims alleging ineffective assistance of counsel. See *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 147, 662 A.2d 718 (1995). "To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) counsel's performance was deficient and

(2) the deficient performance prejudiced the defense. . . . The first prong is satisfied by proving that counsel made errors so serious that he was not functioning as the counsel guaranteed by the sixth amendment. The second prong is satisfied if it is demonstrated that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong." (Citations omitted; internal quotation marks omitted.) *Gibson* v. *Commissioner of Correction*, 118 Conn. App. 863, 873–74, 986 A.2d 303, cert. denied, 295 Conn. 919, 991 A.2d 565 (2010).

Before reviewing whether counsel provided ineffective assistance to the petitioner in the present case, we note: "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Citation omitted; internal quotation marks omitted.) *Strickland* v. *Washington*, supra, 466 U.S. 689. With the foregoing principles in mind, we address in turn the petitioner's claims alleging ineffective assistance.

A

The petitioner first claims that his trial counsel provided constitutionally deficient representation by failing to develop and advance his self-defense claim pursuant to General Statutes § 53a-19. Specifically, the petitioner claims that his decision not to testify, made in reliance on the advice of his trial counsel, prevented him from developing sufficient evidence to present to the jury on the issue of whether self-defense was justified under the circumstances. We disagree.

The substantive principles governing a defendant's claim of self-defense are well settled. As interpreted by our Supreme Court, § 53a-19 (a)[5] provides that "a person

may justifiably use *deadly* physical force in self-defense only if he *reasonably* believes *both* that (1) his attacker is using or about to use deadly physical force against him, or is inflicting or about to inflict great bodily harm, *and* (2) that deadly physical force is necessary to repel such attack." (Emphasis in original.) *State* v. *Prioleau*, 235 Conn. 274, 285–86, 664 A.2d 743 (1995).

"We repeatedly have indicated that the test a jury must apply in analyzing the second requirement, i.e., that the defendant reasonably believed that deadly force, as opposed to some lesser degree of force, was necessary to repel the victim's alleged attack, is a subjective-objective one. . . .

"The subjective-objective inquiry into the defendant's belief regarding the necessary degree of force requires that the jury make two separate affirmative determinations in order for the defendant's claim of self-defense to succeed. First, the jury must determine whether, on the basis of all of the evidence presented, the defendant in fact had believed that he had needed to use deadly physical force, as opposed to some lesser degree of force, in order to repel the victim's alleged attack. . . . The jury's initial determination, therefore, requires the jury to assess the veracity of witnesses, often including the defendant, and to determine whether the defendant's account of his belief in the necessity to use deadly force at the time of the confrontation is in fact credible. . . .

"If the jury determines that the defendant [did] not [believe] that he . . . needed to employ deadly physical force to repel the victim's attack, the jury's inquiry ends, and the defendant's self-defense claim must fail. If, however, the jury determines that the defendant in fact had believed that the use of deadly force was necessary, the jury must make a further determination as to whether that belief was reasonable, from the perspective of a reasonable person in the defendant's circumstances. . . . Thus, if a jury determines that the defendant's honest belief that he had needed to use deadly force, instead of some lesser degree of force, was not a reasonable belief, the defendant is not entitled to the protection of § 53a-19. . . .

"Furthermore, under General Statutes § 53a-19 (b),[6] a person is not justified in using deadly physical force if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating . . . . Thus, a defendant who raises a claim of self-defense is required to retreat in lieu of using deadly physical force if the state establishes beyond a reasonable doubt that a completely safe retreat was available and that the defendant actually was aware of it." (Citation omitted; footnote added; internal quotation marks omitted.) *State* v. *Saunders*, 267 Conn. 363, 373–74, 838 A.2d 186, cert. denied, 541 U.S. 1036, 124 S. Ct. 2113, 158 L. Ed. 2d 722 (2004).

The rules governing the respective burdens borne by a defendant and the state on the justification of self-defense have been explained by our Supreme Court. "[A] defendant has no burden of persuasion for a claim of self-defense; he has only a burden of production. That is, he merely is required to introduce sufficient evidence to warrant presenting his claim of self-defense to the jury. . . . Once the defendant has done so, it becomes the state's burden to disprove the defense beyond a reasonable doubt. . . . Accordingly, [u]pon a valid claim of self-defense, a defendant is entitled to proper jury instructions on the elements of self-defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified. . . . As these principles indicate, therefore, only the state has a burden of persuasion regarding a self-defense claim: it must disprove the claim beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State v. Clark*, 264 Conn. 723, 730–31, 826 A.2d 128 (2003).

The petitioner specifically argues that his testimony was essential to establish his self-defense claim, and that without his testimony, the jury "had no evidence [to consider] as to [the] petitioner's subjective and objective state of mind, and his ability to flee." The petitioner claims that but for trial counsel's alleged error, it would have been "reasonably probable" that "the jury would have concluded [that the] petitioner acted in self-defense," and, therefore, he was prejudiced by the error. We are not persuaded.

Our thorough review of the record reveals that the evidence supports the habeas court's conclusion that the petitioner failed to prove that trial counsel's advice regarding the decision not to testify was constitutionally deficient. The evidence before the habeas court consisted of the criminal trial transcripts and the testimony of the petitioner, Shea, his trial counsel, and Kestenband, the petitioner's expert witness. Shea testified that he considered calling the petitioner to testify in support of his self-defense claim, and he engaged in conversations with the petitioner concerning this decision. Shea also indicated that he "didn't think [the petitioner's] story was going to hold up" because it "wasn't consistent in the times that [the petitioner] related it to [him]," and he recalled that, after a discussion with the petitioner regarding this decision, the petitioner and his counsel "ultimately agreed that [the petitioner] should not subject himself to cross-examination," which could expose inconsistencies in the petitioner's story. Next, the petitioner testified that he had expressed an interest in testifying, but his trial attorney advised him that, in his professional opinion, it would be unwise for him to do so. The petitioner further testified that his attorney did not advise him which portion(s) of his testimony would likely sound incredible to the jury. Finally, the

petitioner's attorney expert, Kestenband, opined that there may be circumstances where it is appropriate for a defendant not to testify when asserting a self-defense claim. In making this assessment, Kestenband indicated that, in his opinion, a reasonable attorney might consider the extent to which "the cross-examination [would] bring out damaging information," "how . . . the defendant . . . would . . . present as a witness to the jury," and, most importantly, whether there is "a persuasive explanation to the jury that the defendant subjectively felt that his life was in danger or that he faced great bodily harm; and if so, can counsel make a persuasive argument to the jury that the defendant's fear was objectively reasonable." Kestenband testified that it was problematic for the petitioner to rely only on his statement to Detective Luisa St. Pierre in alleging self-defense because the written statement did not: (1) address the petitioner's subjective state of mind, namely, as to whether he feared death or great bodily harm; (2) provide "anything to guide the jury as to the objective reasonableness of what his state of mind was"; or (3) address "why [the petitioner] did or did not feel that he could retreat without using deadly physical force."

In its memorandum of decision, the habeas court, *Cobb*, *J.*, "credit[ed] the testimony of [the] petitioner's trial counsel that he explained the risks of testifying to the petitioner and that the petitioner understood those risks and agreed that the better strategy would be that he waive his right to testify at trial." The court also credited Shea's testimony that the petitioner was "very bright" and that the petitioner "conducted his own legal research and had opinions about his criminal trial." The court further found that "[t]he petitioner exercised his right not to testify after being properly advised by his counsel and canvassed by the trial court." In addition, the court found that "[a]fter making the decision not to testify, the petitioner never changed his mind."

In assessing the performance prong of *Strickland*, we conclude that the habeas court's determination that Shea's decision to advise the petitioner not to testify was reasonable trial strategy and, accordingly, was not erroneous. As a preliminary matter, we note that "[i]t is the right of every criminal defendant to testify on his own behalf . . . and to make that decision after full consultation with trial counsel." (Citation omitted; internal quotation marks omitted.) *Lewis* v. *Commissioner of Correction*, 89 Conn. App. 850, 870, 877 A.2d 11, cert. denied, 275 Conn. 905, 882 A.2d 672 (2005); see *Rock* v. *Arkansas*, 483 U.S. 44, 49, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987); see also *State* v. *Davis*, 199 Conn. 88, 93–94, 506 A.2d 86 (1986). In the present case, Shea testified that he informed the petitioner that the decision to take the witness stand was his alone to make. The record reflects that the trial court canvassed the petitioner during his criminal trial and, when asked

whether he was aware that he had the right to testify, the petitioner answered in the affirmative. The court then confirmed that the petitioner knew that the decision whether to testify at his criminal trial was his choice. The petitioner indicated that he opted not to testify after consulting with his trial counsel. The habeas court, therefore, did not err in finding that the petitioner had knowingly, voluntarily, and intelligently waived his right to testify.

Shea's testimony at the habeas hearing reflects that he strategically advised the petitioner not to testify at the criminal trial in order to prevent the state from exposing inconsistencies in his testimony during cross-examination. First, Shea testified that on the basis of the conversations that he had with the petitioner in preparation for the criminal trial, Shea believed that the jury would find the petitioner's story to be both inconsistent and incredible. Second, Shea testified that he was concerned that the petitioner's testimony would not be consistent with the oral statement he had previously made upon his arrest.[7] Collectively, these reasons formed the basis of Shea's opinion that the petitioner should not testify in support of his self-defense claim at the criminal trial.

Our review of the record discloses that the evidence supports the habeas court's conclusion that the petitioner has failed to prove that trial counsel's advice regarding the decision not to testify was deficient. The petitioner has not demonstrated that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment." (Internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 680, 51 A.3d 948 (2012). Having found no deficiency as to this claim, it is unnecessary for this court to determine whether the petitioner was prejudiced. See *Gibson* v. *Commissioner of Correction*, supra, 118 Conn. App. 873–74. Accordingly, we conclude that the habeas court properly found that the petitioner had not satisfied his burden with regard to the performance prong of *Strickland* with respect to his trial counsel's failure to call him to testify at his criminal trial.

B

The petitioner next claims that his trial counsel rendered ineffective assistance by failing to object to the trial court's recitation of the entire statutory definition of intent, pursuant to § 53a-3 (11),[8] when instructing the jury on the intent required to find the petitioner guilty on the murder charge. We disagree.

We begin by setting forth the well established standard of review for claims of instructional impropriety. "[I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether

the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury." (Citation omitted; internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 360–61, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005).

Our Supreme Court has recognized that although it is improper for the court to read the entire statutory definition of intent to the jury in cases in which the defendant has been charged with a specific intent crime, that, in itself, is not dispositive as to whether the jury may have been misled. See *State* v. *Austin*, 244 Conn. 226, 236, 710 A.2d 732 (1998). "The defendant may prevail on his claim only if it is reasonably possible that the charge, viewed in its entirety, misled the jury." *State* v. *Holmes*, supra, 75 Conn. App. 737.

The record reveals the following additional facts relevant to the resolution of this claim. When instructing the jury, the trial court recited the "engage in conduct" portion of the statutory definition of criminal intent.[9] Thereafter, the court instructed the jury on the specific crimes charged. When instructing the jury on the murder charge, the court stated the following:

"The [petitioner] is charged with the crime of murder, in violation of § 53a-54 of the criminal code, which, insofar as [is] relevant in this case, provides as follows: A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person.

"For you to find the [petitioner] guilty of this charge, the state must prove the following elements beyond a reasonable doubt. One, that the [petitioner] intended to cause the death of another person. And, two, that in accordance with that intent, the [petitioner] caused the death of that person. . . .

"The state must prove beyond a reasonable doubt that . . . the [petitioner] caused the death of the victim with the intent to cause that death.

"I previously discussed the issue of intent required in this case. [The] state must prove beyond a reasonable doubt that the [petitioner], in causing the death of the victim, did so with the specific intent to cause the

death.''

We note that, after the charge was delivered, Attorney Shea did not take an exception to the jury instruction pursuant to Practice Book § 42-16. After deliberating for a period of time, the jury requested clarification regarding the definition of intent.[10] The trial court then stated, in relevant part:

"Intent relates to the condition of the mind of the person who commits the act, his purpose in doing so. As defined by our statute, a person . . . acts intentionally, with respect to a result or conduct, when his conscious objective is to cause such a result or to engage in such conduct. . . .

"The state has to prove beyond a reasonable doubt that the [petitioner] in this case caused the death of the victim and did so with the specific intent to cause death. There's no particular length of time necessary for the [petitioner] to have formed that specific intent to kill. . . .

"The type and number of wounds inflicted, as well as the instrument used, may be considered as evidence of the perpetrator's intent. And from such evidence, an inference can be drawn in some cases that there was an intent to cause death.''

Without objection from Shea, the jury subsequently was provided with an exact written copy of the intent and self-defense instructions that were read during the initial jury instruction. The petitioner accurately notes that it is impossible for this court to quantify how many times the jury referred to the written instruction during deliberations. The court, therefore, on two separate occasions orally instructed the jury to consider the entire statutory definition of intent and later provided the jury with identical written instructions upon its request.

The habeas court found that "neither trial counsel nor appellate counsel rendered ineffective assistance by failing to challenge the trial court's jury instructions." The court reasoned that, given the subsequent proper jury instructions, it was not likely that the jury was misled on the element of specific intent required to find the petitioner guilty of murder, namely, the intent to cause the victim's death. In reaching this conclusion, the court noted that "[w]hile the trial court did improperly read the intent to 'engage in conduct' language in its initial charge to the jury as part of its general definition of intent and in its reinstruction to the jury, where it simply reread its initial instructions, the trial court repeatedly instructed the jury that the state had to prove that the petitioner caused the death of the victim with the specific intent to cause his death." The court further found that "the trial court instructed the jury approximately nine times that in order to find the petitioner guilty of murder, it was required to find that he caused

the death of the victim with the specific intent to cause his death."

On appeal, the petitioner claims that he was prejudiced by the allegedly deficient performance of Shea, his trial counsel, in failing to object to the jury charge on intent.

The petitioner argues that the court's instruction led the jury to an incorrect verdict because "[b]y referring to conduct as well as result, the jury could have reasonably concluded that it was not necessary for the state to show that [the] petitioner intended the precise harm to the victim, which was death, but only needed to prove that [the] petitioner intentionally engaged in the conduct of shooting the victim." The petitioner further claims that he was prejudiced because "the repeated instruction [reciting the entire statutory definition of intent] still had a deleterious effect on the jury's decision-making process," despite the subsequent delivery of properly narrowed instructions, and that "the jury's verdict would have been different but for trial counsel's failure to challenge the instruction." We do not agree.

The petitioner's claim that his trial counsel rendered ineffective assistance is readily dispensed with under the prejudice prong of *Strickland*. The trial court orally instructed the jury on two occasions, reciting the entire definition of intent as codified in § 53a-3 (11). The jury was then provided with an exact written copy of these improper instructions. Subsequently, the court correctly instructed the jurors, on approximately nine occasions, that to find the petitioner guilty of murder in violation of § 53a-54a, they must find that he caused the death of the victim with the specific intent to cause his death.

Given the court's contemporaneous delivery of properly narrowed instructions on intent, it strains reason to believe that the jury could have misunderstood the court's charge, when viewed in its totality, to require that the jury base a finding of guilt on anything less than a finding that the [petitioner] possessed the specific intent to cause the victim's death. See *State* v. *Holmes*, supra, 75 Conn. App. 738. Accordingly, on the basis of the evidence in the record, there does not exist a reasonable probability that the outcome of the criminal trial would have been different had trial counsel objected to the jury charge on intent. See *Michael T.* v. *Commissioner of Correction*, 307 Conn. 84, 102, 52 A.3d 655 (2012). Even if the petitioner's trial attorney had objected, the petitioner has not shown that the result of the trial would have been different. The petitioner has not established that his trial counsel's failure to object to the jury charge on intent deprived him of a fair trial. Because the petitioner has failed to demonstrate that he was prejudiced by any allegedly ineffective assistance of his trial counsel, we need not address his claim under the performance prong. See, e.g., *John-*

*son* v. *Commissioner of Correction*, 285 Conn. 556, 579, 941 A.2d 248 (2008).

C

The petitioner also argues that his appellate counsel, Zitser, was ineffective for failing to challenge on direct appeal the jury charge on intent. We disagree.

"The petitioner's burden of proof is the same in the claim of ineffective assistance of appellate counsel as it is for ineffective assistance of trial counsel: to establish that, based upon the totality of the evidence before the jury and upon the likely effect of the instructional error, as a result of the error of the trial court . . . there is a probability sufficient to undermine confidence in the verdict that he seeks to overturn. . . . In order to demonstrate such a fundamental unfairness or miscarriage of justice, the petitioner should be required to show that he is burdened by an unreliable conviction." (Citation omitted; internal quotation marks omitted.) *Porter* v. *Commissioner of Correction*, 99 Conn. App. 77, 83–84, 912 A.2d 533, appeal dismissed, 284 Conn. 431, 934 A.2d 242 (2007).

The petitioner's claim that his appellate counsel rendered ineffective assistance similarly fails under the performance prong of *Strickland*. In light of the charge, when viewed as a whole, the petitioner's appellate counsel was well justified in deciding not to raise a claim of instructional error on appeal. See *State* v. *Peeler*, supra, 271 Conn. 360–61.

As the habeas court noted, it was "not reasonably possible that the jury was misled because the jury charge, on the whole, correctly informed the jury that in order to find the petitioner guilty of murder, it had to find that he possessed the specific intent to cause the victim's death." In making this finding, the court properly considered the totality of the jury instructions to determine whether the jury was, in fact, misled. See *State* v. *Guzman*, 125 Conn. App. 307, 314–15, 7 A.3d 435 (2010), cert. denied, 300 Conn. 902, 12 A.3d 573 (2011). Accordingly, after having reviewed the entire charge, we conclude that the petitioner has failed to overcome the strong presumption that, under the circumstances, his counsel's failure to challenge the jury instruction fell within the wide range of reasonable professional assistance. See *Bryant* v. *Commissioner of Correction*, 290 Conn. 502, 513–14, 964 A.2d 1186, cert. denied sub nom. *Murphy* v. *Bryant*, 558 U.S. 938, 130 S. Ct. 259, 175 L. Ed. 2d 242 (2009). Because we conclude that the petitioner has failed to demonstrate that his appellate counsel rendered deficient performance in failing to raise a claim of error on appeal that was based on the trial court's intent charge, we do not reach the issue of prejudice, and the petitioner's ineffective assistance of counsel claim must fail.

Thus, we conclude that the habeas court abused its

discretion in denying the petition for certification to appeal. In reviewing the merits of the petitioner's underlying ineffective assistance of counsel claims, however, we also conclude that the habeas court had before it sufficient evidence to find, as it did, that the petitioner failed to establish that either his trial or appellate counsel rendered ineffective assistance.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] The habeas court noted the following: "The petitioner's third amended petition includes other claims regarding trial counsel's conduct that were withdrawn after the conclusion of evidence, including claims that trial counsel failed to (1) adequately cross-examine, impeach or otherwise challenge the testimony of Donnette Williams; (2) request a lesser included offense charge; (3) object to the state's recitation and explanation of the law of self-defense in its closing argument; (4) raise a pretextual claim and argument in the motion to suppress and at the hearing on that motion; and that he (5) improperly withdrew the petitioner's suppression claim concerning the seizure of the weapon before the suppression hearing." The petitioner's third amended petition also included a third count alleging prosecutorial impropriety. The petitioner withdrew that claim during the habeas trial.

[3] General Statutes § 52-470 (g) provides: "No appeal from the judgment rendered in a habeas corpus proceeding brought by or on behalf of a person who has been convicted of a crime in order to obtain such person's release may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or, if such judge is unavailable, a judge of the Superior Court designated by the Chief Court Administrator, to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies."

[4] General Statutes § 53a-3 (11) provides: "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ."

[5] The defense of self-defense is codified in § 53a-19 (a), which provides in relevant part: "[A] person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm."

[6] General Statutes § 53a-19 (b) provides: "Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using deadly physical force upon another person if he or she knows that he or she can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he or she is in his or her dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he or she is a peace officer, a special policeman appointed under section 29-18b, or a motor vehicle inspector designated under section 14-8 and certified pursuant to section 7-294d, or a private person assisting such peace officer, special policeman or motor vehicle inspector at his or her direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he or she abstain from performing an act which he or she is not obliged to perform."

[7] At the petitioner's criminal trial, St. Pierre testified as follows: "[The petitioner] told me that what happened to his boy was fucked up. And [I] asked [the petitioner] who was his boy, and [the petitioner] said [the victim]. And I said what happened to [the victim]. That is when [the petitioner] told me [the victim] came to where he was with another friend, and [the petitioner] and [the victim] had been drinking. [The victim] went to the trunk of the car, got a gun and came at [the petitioner]. [The petitioner] managed to get the gun from [the victim]. That is when [the petitioner] shot [the

victim].” (Internal quotation marks omitted.) *State* v. *Miller*, supra, 67 Conn. App. 548 n.5.

[8] See footnote 4 of this opinion.

[9] The court stated, in relevant part: “Intent relates to the condition of the mind of the person who commits the act, his purpose in doing so. As defined by our statute, a person acts intentionally with respect to a result or to conduct when his conscious objective is to cause such result or to engage in such conduct.

“What a person’s purpose, intention, or knowledge has been is usually a matter to be determined by inferences. No person is able to testify that he looked into another’s mind and saw therein a certain purpose or intention, or certain knowledge to do harm to another.

“The only way that you as a jury can determine what a person’s purpose, intention or knowledge was at any given time, aside from that person’s own statement or testimony, is to determine what the person’s conduct was, or [what] the circumstances were surrounding that conduct, and from that, infer his purpose, intention, or knowledge.

“To draw such an inference is not a privilege but the proper function of the jury, provided, of course, that the inference drawn complies with the standards for inferences as explained in connection with my instruction on circumstantial evidence.

“The state must prove beyond a reasonable doubt that the [petitioner], in causing the death of the victim, did so with the specific intent to cause death.

“There’s no particular length of time necessary for the [petitioner] to have formed the specific intent to kill.

“I have already discussed the question of intent with you. I’m not going to repeat it entirely here. But keep in mind the instructions previously given on this point are applicable. . . .

“The type or manner of the wounds inflicted, as well as the instrument used, may be considered as evidence of the perpetrator’s intent, and from such evidence, an inference can be drawn that there was an intent to cause death. Any inference that may be drawn from the nature of the instrument used and the manner of its use is an inference of fact to be drawn by the jury upon consideration of these and other circumstances.”

[10] In addition, the jury also asked for clarification regarding the definition of self-defense.